THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY TURNER YATES, Defendant-Appellant.

Third District   No. 3—88—0602

Opinion filed March 9, 1990.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Jerry Turner Yates, was charged by information with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)). Following a jury trial, he was convicted and sentenced to a term of 24 years' imprisonment. The defendant appeals. We affirm.

The record reveals that the defendant worked for Roberts and Dybdahl as a truck driver. On July 15, 1987, while returning from a delivery, he picked up hitchhiker Karen Wyckoff. The defendant testified that Wyckoff told him that she needed money and asked him if he was interested in having sex with her. He initially refused her offer but later agreed. They then drove to Roberts and Dybdahl, where they engaged in sexual intercourse. Afterwards he gave Wyckoff some money, but she told him that it was not enough and demanded that he pay her $100 a month. She told him that if he refused, she would report him to the police for having sex with a minor. When he refused to give her any more money, they began arguing.

The defendant testified that at one point Wyckoff raised her hands as if to scratch his face. To protect himself, he grabbed her hands and tied them together with a bungee cord. When she continued verbally threatening him, he tied another bungee cord around her neck. The defendant stated that he then went outside to see if anyone had heard the argument. When he returned about 10 minutes later, Wyckoff was dead. Not knowing what to do, he took her body to his parents' property and buried it.

On July 30, 1987, the defendant turned himself in to the Rock Island County sheriff's department. He explained at trial that he did so because he could no longer live with what he had done. The defendant stated that he did not intend to kill Wyckoff and that he was not aware that by tying the cord around her neck he would do so.

The defendant also presented evidence that at the time of the killing he was suffering from post-traumatic stress disorder as a result of combat experiences in Vietnam. He stated that he had served 19 months in Vietnam. As a rear gunner on a tank, he was openly exposed to enemy fire. During his first 12 months there, four of his tanks were hit by either land mines or rocket fire. Further, he testified that he witnessed someone being injured or killed every three or four days. The defendant was awarded the Purple Heart, the Silver Star, and the Vietnam Service Medal.

Psychiatrist Thomas Tourlentes, chief of the Veterans' Administration Mental Health Clinic in Peoria, testified that the defendant suffered from post-traumatic stress disorder and that this condition was a factor in his conduct. Dr. Tourlentes explained that the defendant was acting out of fear and panic when he killed the victim. The doctor opined that the defendant's judgment was impaired and that the disorder might have caused him to react in a more physical manner than another person. He stated that the defendant would have done whatever he felt was necessary to control the situation.

Psychiatrist Earl Fitz testified that when the defendant was confronted with the victim's threats, he felt cornered and, as a result, was not able to exercise good judgment. This was particularly true since he perceived the situation as involving the possible loss of his family, job, and reputation in the community. Dr. Fitz stated that the defendant had entered into a survival mode, which caused him to view the victim's threat as seriously as a threat to his physical self. Fitz termed this a state of "psychological self-defense."

Several of the defendant's family members and friends also testified regarding his condition. One friend testified that while the defendant was attending a party, he began acting as if he were under enemy fire in Vietnam.

At the jury instructions conference, defense counsel tendered instructions on second degree murder based upon serious provocation and self-defense. Defense counsel argued that even though the defendant did not raise self-defense as an affirmative defense, the jury could nonetheless find, based upon Dr. Fitz's testimony, that the defendant unreasonably believed he was acting in self-defense. The trial court agreed to instruct the jury on second degree murder based

upon serious provocation, but refused to do so with respect to self-defense. The jury subsequently found the defendant guilty of first degree murder.

On appeal, the defendant argues that the trial court erred in refusing to instruct the jury on second degree murder based upon self-defense, since there was sufficient evidence presented to support such an instruction.

The offense of second degree murder is defined in relevant part as follows:

"(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and either of the following mitigating factors are [*sic*] present:
***

(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under *** Article 7 of this Code, but his belief is unreasonable." Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(2).

Article 7 provides that "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***." Ill. Rev. Stat. 1987, ch. 38, par. 7—1.

It is well settled that if there is evidence in a murder prosecution which if believed by a jury would reduce the crime to manslaughter, an instruction defining that offense should be given. (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378.) Moreover, if there is some evidence that the defendant subjectively believed that his use of force was justified, a voluntary manslaughter instruction should be given to the jury which would allow it to convict the defendant of the lesser offense if the jury found that he had such a subjective belief but the belief was unreasonable. (*Lockett*, 82 Ill. 2d at 551, 413 N.E.2d at 381.) While we note that the voluntary manslaughter statute was replaced by the current second degree murder statute, the elements of the offense remain the same. Compare Ill. Rev. Stat. 1985, ch. 38, par. 9—2, with Ill. Rev. Stat. 1987, ch. 38, par. 9—2.

Based upon our review of the record, we are unable to find that the defendant was entitled to a second degree murder instruction based upon self-defense. The expert testimony did not establish that the defendant actually perceived the victim's blackmail attempt as a

physical threat. Rather, it established that because of post-traumatic stress disorder, the defendant reacted to the blackmail attempt as seriously as most people would to a physical threat. This is an important distinction. The second degree murder statute provides a mitigating factor only where the defendant actually believes, though unreasonably, that he is physically threatened. It does not cover circumstances where a mental disorder causes the defendant to overreact to a nonphysical threat. Therefore, the trial court did not err in refusing to instruct the jury on the offense of second degree murder based upon self-defense.

The defendant also argues that, given the mitigating factors present, the trial court abused its discretion in sentencing him to more than the mandatory minimum sentence of 20 years. Specifically, he notes that he had no prior criminal record, he voluntarily surrendered to the police, he confessed to the killing, and he is a decorated war veteran suffering from post-traumatic stress disorder as a result of his combat experiences.

■ We note that, throughout the course of the trial and sentencing hearing, the court had an opportunity to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, and age. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Therefore, its sentencing decision is entitled to great deference and will not be altered on review unless it represents an abuse of discretion. *Perruquet*, 68 Ill. 2d at 153, 308 N.E.2d at 884.

■ In the instant case, it is evident from the record that, in sentencing the defendant, the trial court specifically addressed each of the factors cited by the defendant and considered them in making its sentencing determination. Further, the defendant could have received anywhere from 20 to 40 years in prison (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a)). Under these circumstances, we are unable to find that the trial court abused its discretion in sentencing the defendant to a term only four years beyond the minimum permissible sentence.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.