In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2308

PORFIRIO GUTIERREZ,

*Petitioner-Appellant,*

*v.*

KEITH ANGLIN, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 1782—**Harry D. Leinenweber**, *Judge.*

ARGUED SEPTEMBER 14, 2012—DECIDED FEBRUARY 8, 2013

Before POSNER, ROVNER and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge.* Porfirio Gutierrez was convicted of first degree murder in the death of Joyce Raymond. After pursuing his Illinois state court avenues for relief from that conviction, Gutierrez brought an action for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, alleging that he received ineffective assistance of counsel at trial in violation of the Sixth Amendment. The district court denied his habeas petition, and he has appealed to this court.

Gutierrez received two criminal trials in state court, the first a jury trial and the second a bench trial, and was convicted each time. At the time of his first trial, he was taking psychotropic medications to treat his diagnosed psychiatric disorder. The Illinois appellate court reversed that conviction and remanded the case for a new trial because the court had failed to conduct a fitness hearing to ensure that the medication did not adversely affect Gutierrez' fitness to stand trial.

Gutierrez was again convicted of first degree murder, this time after a bench trial, and was sentenced to 50 years' imprisonment. Gutierrez testified at that trial as to the events of the night of Raymond's death. He testified that around 2 a.m., Raymond knocked on Gutierrez' apartment door along with two young men. The knocking and kicking on the door awakened him, and he asked what they wanted. They responded that they wanted to talk with him, and he told them he was busy and they should leave. When they continued knocking on the door, he became frightened and retrieved a knife from the kitchen. He then opened the door slightly to ask them what they wanted, and one of the young men began pushing on the door and hit him. He stabbed that man in the arm and told the man that he did not want to kill the man but wanted the man to leave the apartment. That young man left, and Raymond then pushed her way into the apartment and tried to hit him. He backed away from her, and she continued forward. She did not stop and, while she was swinging at him, he stabbed her with the knife. He then rushed downstairs and told the clerk to call the police because

people had forced their way into his apartment. He grabbed a fork that he found in the hallway to use for protection, and hid in the stairwell while awaiting the arrival of the police. In the hallway, he encountered Fernando Corona, and told Corona to call the police and that a woman had tried to break into his apartment and rob him. He further testified that he thought the intruders had a gun.

That testimony was contradicted by both the testimony of witnesses and by the physical evidence at trial. The government witnesses testified that the victim, Raymond, visited Gutierrez' apartment late in the evening of October 24, 1990, with her 14-year-old son Louis Raymond ("Louis"), where Gutierrez discussed the prospect of Louis selling drugs for him on the street. Raymond and Louis eventually left his apartment, and Louis then related the conversation to his 13-year-old friend Antonio Alexander ("Antonio"). A few hours later, shortly before 2:30 a.m., Raymond, Louis and Antonio returned to Gutierrez' apartment. The evidence demonstrated that none of them possessed a weapon, but Raymond carried a can of Old English malt liquor in a paper bag. Later testing established that Raymond had a blood alcohol content of 292 milligrams per deciliter, which an average-sized person would reach only by drinking fourteen typical drinks in the hour before testing. Gutierrez opened the door at their knock, told them to come back later, and closed the door again. At their third round of knocking, Gutierrez opened the door, grabbed Antonio by the arm pulling him into the apartment, and slammed and locked the door behind

him. He stabbed Antonio in the arm inside the apartment, and Antonio fled to the bathroom saying "don't kill me." Antonio encountered another man in the apartment who helped him, and when Gutierrez opened the door again in response to Raymond's continued knocking, Antonio ran from the apartment into the hallway. He and Louis retreated down the hallway, but despite their encouragement Raymond was too drunk to follow. Gutierrez emerged into the hallway, yanked Raymond to the floor, and began stabbing her in the hallway. Another resident of the building, Fernando Corona, encountered Raymond in the 6th-floor stairwell of the building crying for help, and saw Gutierrez climbing the stairs toward the 7th floor holding a bloody knife. Corona testified that Gutierrez told him to go ahead and call the police and that Raymond had tried to rob him and break into his apartment. Corona stated that Gutierrez then walked down the stairs, kicked Raymond in the stomach, and told Corona to let her bleed to death.

The physical evidence at trial was consistent with the testimony of the government witnesses. It demonstrated that there was blood in the stairwell, on the push plate of the stairwell door, next to the elevator buttons, and on the floor on the outside of Gutierrez' door, but not inside the apartment doorway. The detectives also observed blood on the bathroom floor and around the bathroom door of Gutierrez' apartment. There was no evidence of forced entry or damage to the door of his apartment. The autopsy demonstrated that Raymond was stabbed once each in her right abdomen, left

abdomen and left groin, and was stabbed twice in her left arm and three times on her left hand, causing her death.

At that trial, Gutierrez asserted a claim of self defense as a mitigating factor that could render him guilty of second degree rather than first degree murder, claiming that Raymond was breaking into his apartment to rob and kill him when he stabbed her. Gutierrez' attorney did not present any evidence of Gutierrez' history of mental illness at the trial.

Gutierrez argued in a petition for post-conviction relief in the state court that the evidence of mental illness could have bolstered his claim of self defense by establishing that he acted under a belief, though unreasonable, that he needed to defend himself. He argued that the failure to present that evidence constituted ineffective assistance of counsel. The trial court summarily denied that petition, but the Illinois appellate court reversed, holding that the evidence of mental illness could have reduced his conviction from first degree to second degree murder, and the court remanded the case in order for the trial court to conduct an evidentiary hearing as to the mental illness evidence that could have been presented.

At that evidentiary hearing, the court heard extensive testimony as to Gutierrez' history of treatment for mental illness. Briefly, that evidence included multiple hospitalizations for mental illness between 1981 and 1990 when the crime occurred. Gutierrez was diagnosed with varied mental illnesses during those hospitalizations,

including brief reactive psychosis, atypical psychosis, undifferentiated chronic schizophrenia with acute exacerbation and antisocial personality disorder, unspecified psychosis, bipolar affective disorder-manic severe with psychotic behavior, and other diagnoses of schizophrenia. The treatment notes from those hospitalizations included references to impaired judgment and auditory hallucinations.

Following the evidentiary hearing, the trial court again denied the petition for post-conviction relief. The Illinois appellate court affirmed that determination on appeal. The Illinois Supreme Court then denied leave to appeal, and therefore our review is of the decision of the Illinois appellate court.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief on a claim decided in the state court only if the state court adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 386 (2000). In state court, Gutierrez argued that his attorney's failure to present evidence of his mental illness at trial constituted ineffective assistance, and if his attorney had done so there was a reasonable probability that he would have been convicted of second degree rather than first degree murder. He contended that evi-

dence of his mental illness would have demonstrated that he was suffering from schizophrenic delusions that caused him to sincerely but unreasonably believe that his actions were necessary to defend himself against a physical threat posed by Raymond as she approached him and was swinging at him in his apartment. The state trial and appellate courts rejected those assertions, holding that the evidence presented at the hearing failed to demonstrate that he was suffering from such delusions at the time of the offense, and that, in light of the other evidence at trial, there was no reasonable probability that he would have been convicted of second degree rather than first degree murder even if such evidence were admitted.

Gutierrez argues on appeal that the state court determination was both contrary to Supreme Court precedent and involved an unreasonable application of the facts to the law. First, he asserts that the court incorrectly identified the *Strickland* standard for analyzing ineffective assistance claims, and that the court improperly used a subjective rather than an objective approach in applying that standard.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that in order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's performance fell below an objective standard of reasonableness, and that the attorney's deficient performance actually prejudiced the petitioner. In order to establish prejudice, a petitioner must demonstrate "a reasonable probability that, but

for counsel's unprofessional errors, the result of the
proceeding would have been different." *Id.* at 694. The
question is not whether the particular factfinder
would have found a reasonable probability from a sub-
jective standpoint, but rather is an objective one. *Id.* at
695; *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012).
A reasonable probability is a probability sufficient to
undermine confidence in the outcome, but does not
require that a petitioner show that the deficient conduct
more likely than not altered the outcome of the case.
*Strickland*, 466 U.S. at 694; *Harris*, 698 F.3d at 644.

Gutierrez maintains that the state appellate court im-
properly applied *Strickland* by employing a subjective
standard in determining whether there was a rea-
sonable probability that evidence of Gutierrez' mental
illness would have changed the outcome. He asserts
that the appellate court did not simply defer to the
trial court's findings of fact, but also improperly
deferred to the subjective view of the trial court judge
about whether, had the evidence of Gutierrez' schizo-
phrenia been introduced at trial, that judge would
have concluded that Gutierrez acted with a genuine
though unreasonable belief that he needed to use force
to defend himself from Raymond. Our review of the
Illinois appellate court opinion belies this claim. The
appellate court merely noted that it was authorized to
consider the trial judge's familiarity with the trial in
reviewing the decision. That is consistent with this court's
holding in *Raygoza v. Hulick*, 474 F.3d 958, 964 (7th Cir.
2007). In *Raygoza*, we addressed the application of the
objective standard in a case in which the trial judge

also presided over a post-conviction proceeding. We noted that the objective standard means that we cannot accept as conclusive the trial judge's statement that the new evidence would not have made any difference to the outcome, but we also noted that we naturally give great weight to the judge's assessment, particularly as to the credibility of the witnesses. *Id.* That is the approach taken by the Illinois appellate court. Moreover, the Illinois appellate court also held that even if the mental illness were established, it was insufficient as a matter of law because the second degree murder statute does not provide a mitigating factor where a mental disorder caused the defendant to overreact to a non-physical threat. That determination by the court was independent from any subjective analysis of the trial court, and as we will discuss later that objective basis is ultimately the dispositive analysis. Accordingly, the subjective opinion of the trial court was irrelevant to the portion of the appellate court opinion that is controlling in this appeal, and this argument cannot succeed.

In addition, Gutierrez argues that the appellate court repeated the trial court's error of applying an improper *Strickland* standard, akin to a preponderance of the evidence standard, to its prejudice analysis. That contention mischaracterizes the appellate court's opinion. The Illinois appellate court recognized the ambiguity in the trial court's language, but repeatedly set forth the proper test under *Strickland*. Gutierrez relies on isolated sentences in which shorthand references were made to the *Strickland* standard, but those sentences were not representative of the court's analysis. Following the

isolated sentences identified by Gutierrez, the Illinois appellate court identified in detail the proper standard under *Strickland*. Read as a whole and not as isolated sentences separated from the surrounding content, it is clear that the *Strickland* standard was properly identified and applied.

Gutierrez also argues that the Illinois appellate court unreasonably applied the law to the facts in holding that there was not a reasonable probability that evidence of his mental illness would alter the outcome. He argues that the court's decision improperly failed to credit the evidence that he suffered from schizophrenia at the time of the murder.

Both the state trial and appellate courts discussed the evidence that Gutierrez suffered from schizophrenia, and considered whether the evidence indicated that his actions that night were impacted by that mental illness, or whether he was essentially asymptomatic at that time. There is little evidence that he experienced any delusions, paranoia, or other significant symptoms at the time of the murder, but ultimately that inquiry is of no relevance to our decision. Evidence of a long-standing mental illness is not a mitigating factor in the crime of murder, and therefore proof that he was suffering from schizophrenia or another mental illness would not allow a jury to convict him of second degree murder rather than first degree murder. *People v. McDonald*, 769 N.E.2d 1008, 1019 (Ill. App. 1 Dist. 2002).

Under Illinois law, second degree murder occurs when a person commits first degree murder and a mitigating

factor, either provocation or self defense, is present. *Id.* at 1018; see 720 ILCS 5/9-2(a)(1), (a)(2) (West 1994). Moreover, "[t]he defendant 'bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder.' " *Id.*, quoting *People v. Jeffries*, 646 N.E.2d 587, 591 (Ill. 1995). The only mitigating factor proposed by Gutierrez is that of self defense. In order to raise the prospect of second degree murder by reason of self defense, Gutierrez would have had to establish by a preponderance of the evidence that he actually believed, though unreasonably, that he was physically threatened. *Id.* at 1019. The second degree murder statute "does not cover, however, 'circumstances where a mental disorder causes the defendant to overreact to a non-physical threat.' " *Id.*, quoting *People v. Yates*, 551 N.E.2d 999, 1001 (Ill. App. 3 Dist. 1990).

The only evidence at trial that Gutierrez responded, albeit unreasonably, to a physical threat was his testimony that Raymond had barged into his apartment and was coming at him attempting to hit him despite his protestations. He faults his counsel for failing to produce evidence of his mental illness, but that evidence would have been of little to no help as to the critical issue of whether he actually believed that he was physically threatened. The evidence would have demonstrated that he suffered from some mental illness which resulted in numerous hospitalizations, and included repeated diagnoses of schizophrenia. There was virtually no evidence, however, that he was experi-

encing any symptoms of that mental illness on that night which would have caused him to perceive a physical threat.

Gutierrez' assertion of a physical threat was based upon his testimony of a forced entry into his apartment. He has never argued that their presence in the hallway itself posed a physical threat or that his mental illness caused him to perceive them as a physical threat despite the locked apartment door. He instead asserts that although the visitors to his apartment were unarmed, his mental illness contributed to his perception that they posed a physical threat when they pushed their way into his apartment and approached him. That testimony by Gutierrez, however, is contradicted by virtually all of the eyewitness testimony and the physical evidence in the case. The eyewitness testimony was that Gutierrez pulled Antonio into the apartment and began stabbing him, and that Antonio fled to the bathroom to avoid the attack. Antonio then escaped the apartment, at which time Gutierrez entered the hallway, pulled Raymond to the floor, and began stabbing her. The physical evidence corroborates that testimony. The blood found in the apartment was near the bathroom. Significant blood evidence was found in the hallway outside of the apartment, but no such evidence was found near the doorway inside the apartment where Gutierrez claimed that he stabbed Raymond. Blood was also found in the stairwell and near the elevator button in the hallway. There was no sign of forced entry into the apartment, and the door was not damaged. Therefore, neither the eyewitness testimony

nor the physical evidence supported Gutierrez' claim that they forced their way into his apartment and presented a physical threat. And the evidence of mental illness would not have addressed that shortcoming at all. His argument that they presented a physical threat was never based on any delusion or hallucination that he claims to have experienced based on their presence in the hallway, and that mental illness evidence does not speak at all to whether they entered the apartment. The evidence could have been useful in explaining why he believed that unarmed persons entering his apartment posed a threat, but it is the lack of evidence that the victim entered the apartment and approached him that is the major problem for Gutierrez in establishing the mitigating factor here.

The appellate court held that even if evidence of Gutierrez' mental illness had been presented, there was no reasonable probability that the court would have found that Gutierrez had a genuine, though unreasonable, belief that it was necessary for him to use deadly force to defend himself from Raymond. The court based that holding on the testimony of the two witnesses that Gutierrez had exited his apartment to kill Raymond, and that the witness testimony was consistent with the physical evidence. Finally, the court noted that evidence of long-standing mental illness is not a mitigating factor under the second degree murder statute, nor is it a mitigating factor if a mental illness causes a defendant to overreact to a non-physical threat. *McDonald*, 769 N.E.2d at 1019. Gutierrez did not assert a defense of insanity and does not claim error in the

failure of his attorney to do so. Accordingly, the Illinois appellate court properly analyzed the evidence of his mental illness solely from the perspective of its impact on the self defense mitigating factor in the second degree murder statute. There is no reasonable probability that the evidence of Gutierrez' mental illness would have caused a jury to convict him of second degree murder rather than first degree murder, because Gutierrez has not presented any argument that the mental illness evidence would have aided in establishing the critical component that Gutierrez actually believed that he was physically threatened. The decision by the Illinois appellate court is a reasonable application of the law to the facts, and therefore is not reversible error under the AEDPA standard. See *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2004). The decision of the district court denying the writ of habeas corpus is AFFIRMED.