In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1002

HERNANDEZ BAILEY,

*Petitioner-Appellant*,

*v.*

MICHAEL LEMKE, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 691 — **William J. Hibbler**, *Judge.*

ARGUED JANUARY 16, 2013 — DECIDED NOVEMBER 15, 2013

Before BAUER and HAMILTON, *Circuit Judges* and MILLER,[*]
*District Judge.*

MILLER, *District Judge.* An Illinois trial court convicted
Hernandez Bailey of one count of murder and two counts of
attempted murder. His trial counsel, William Swano, hadn't
filed a discovery motion, so he (like the prosecutor through

---

[*] The Honorable Robert L. Miller, Jr., District Judge of the United States
District Court for the Northern District of Indiana, sitting by designation.

much of the prosecution's case) didn't know that one of the eyewitnesses had testified before a grand jury. Mr. Swano received a transcript of that grand jury testimony after the witness left the stand, and entered into a stipulation that the witness hadn't told the grand jury that Mr. Bailey was at the murder scene. Mr. Bailey contends that Mr. Swano's performance was constitutionally deficient and that he is entitled to a new trial under *Strickland v. Washington*, 466 U.S. 668 (1984). All of the courts to consider this claim so far agree that Mr. Swano's failure to file a discovery motion fell below prevailing professional norms, and the state doesn't question that finding in this court. We agree with the Illinois Appellate Court and the federal district court that Mr. Bailey hasn't shown a reasonable probability that the result of his trial would have differed but for Mr. Swano's error. We affirm the denial of Mr. Bailey's petition for relief under 28 U.S.C. § 2254(d).

Anthony Jackson was shot to death, and Brandon Adams and Anthony Camphor were shot but survived, during a gang fight in May 1987. Someone had thrown a brick at a group of people and fled. The three victims gave chase into a building, where rival gang members opened fire. Mr. Bailey and Darryl Moten were charged with the shootings. Mr. Moten was said to have been the actual shooter, and Mr. Bailey (known to the trial participants as "Peanut") was said to have directed Mr. Moten to shoot. Mr. Bailey waived his right to a jury, and the case proceeded to a trial to the court. Mr. Swano filed no pretrial discovery motion, but the state had given him a transcript of the grand jury proceedings that led to Mr. Bailey's indictment.

Victim Brandon Abrams testified at trial that he found a group of about ten people standing around the building, and asked them where the brick-thrower had gone. He testified that someone (he couldn't say who) shouted, "shoot them marks," and someone else he couldn't identify opened fire. Torrence Adams testified that he and Michael Thompson were at the building when they came upon a group of four Gangster Disciples, including Mr. Bailey and Mr. Moten. Others ran in, asking about the brick-thrower, Mr. Adams said, and Mr. Moten turned with a gun, Mr. Bailey yelled, "shoot," and Mr. Moten fired. Mr. Adams's identification of Mr. Bailey as the shouter wobbled a bit on cross-examination.

Michael Thompson, the next witness, agreed with Mr. Adams up to the point of identification: Mr. Thompson said he didn't see who fired the shots and didn't hear Mr. Bailey tell anyone to shoot. The State moved to have Mr. Thompson declared a hostile witness because of inconsistent statements he'd made to police a few days after the shooting. Officer Thomas Kelly testified that Mr. Thompson had told him that he heard Mr. Bailey say, "shoot him, shoot him," and saw Mr. Moten fire several shots at Anthony Jackson; Officer Kelly testified that he also heard Mr. Thompson say the same things to the prosecutor on the day of trial. During this process, it came to light that Mr. Thompson had testified before a pre-indictment John Doe grand jury (as had Mr. Adams). The prosecutor told the court she hadn't known about that testimony until Mr. Thompson mentioned it at trial. The trial judge adjourned the trial to allow the John Doe grand jury transcript to be obtained. The state gave attorney Swano a copy of that transcript before trial resumed.

Upon resumption of his direct examination, Mr. Thompson agreed that he had told the police (and later told the John Doe grand jury) he heard Mr. Bailey give the order and saw Mr. Moten shoot, and that he had identified Mr. Bailey in a lineup. On cross-examination, Mr. Thompson said that everything he said was untrue, that he had lied because the prosecutors promised him shelter in exchange for cooperation, and that he implicated Mr. Bailey out of a personal dislike.

The John Doe grand jury transcript showed that Mr. Adams hadn't mentioned Mr. Bailey's name to the grand jury. Mr. Adams testified in relevant part:

Q. And at that time did you see a person that you knew to be Darryl Moten?

A. Yes, sir.

Q. How long have you known Darryl Moten?

A. About a year and a half, since he got out of Audy Home.

Q. Was he alone or with other people?

A. With three more guys.

Q. And when you first saw Mr. Moten, where were you?

A. Walking like right beside him, you know, walking from the store.

Q. And when you saw Mr. Moten, where was he at?

A. Standing right by the elevator.

Q. Would that be near the breezeway to 4101 South Federal Building?

A. Yes, sir.

Mr. Swano couldn't ask Mr. Adams about that testimony; Mr. Adams had completed his testimony and we assume he hadn't been brought back for the second day of trial. The prosecutor and Mr. Swano presented two stipulations: (1) that if Officer Kelly were called to testify, he would say he had interviewed Mr. Adams after a lineup three days after the shooting, and that Mr. Adams didn't mention that Mr. Bailey (or "Peanut") was present at the shooting scene, or that he heard Bailey (or "Peanut") tell anyone to shoot, and that Mr. Adams said two of the shooting victims were carrying sticks as they ran into the building, and (2) that if the official court reporter who reported the John Doe grand jury proceedings were called as a witness, she would testify that Mr. Adams was a witness before the grand jury and never mentioned during the course of his testimony that Mr. Bailey or "Peanut" was present at the scene of the shooting.

The trial judge found Mr. Bailey guilty. He said the testimony of the first eyewitness (victim Brandon Abrams) wasn't helpful because he didn't identify anyone, that Mr. Thompson's testimony was persuasive but (because of his recantation) insufficient alone to support a finding of guilty, and that Mr. Adams's testimony (which corroborated Mr. Thompson's) tipped the scale. The trial judge gave no weight to the stipulation about Mr. Adams's John Doe grand jury testimony because there was no context in which to weigh it.

The Illinois Appellate Court affirmed Mr. Bailey's conviction, *People v. Bailey*, 638 N.E.2d 192 (Ill. App. Ct. 1994), and Mr. Bailey sought post-conviction relief because (among other things) Mr. Swano hadn't filed a discovery motion and gotten the John Doe grand jury transcript of Mr. Adams's testimony in time to use it while Mr. Adams was on the stand. The post-conviction court agreed with Mr. Bailey, but the appellate court reversed. *People v. Bailey*, 872 N.E.2d 1018 (Ill. App. Ct. 2007). The appellate court agreed with the post-conviction court that the failure to move for discovery fell below the constitutional minimum for counsel, but went on to hold that Mr. Bailey hadn't shown a reasonable probability that a different result would have followed a timely discovery motion. 872 N.E.2d at 640–41. The Illinois Supreme Court denied leave to appeal, *People v. Bailey*, 882 N.E.2d 79 (Ill. 2008), and the United States Supreme Court denied certiorari. *Bailey v. Illinois*, 555 U.S. 1178 (2009).

Mr. Bailey filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254(d), arguing among other things that he was denied effective assistance of counsel and that the Illinois Appellate Court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). The district court denied the petition, holding that the Illinois Appellate Court didn't apply law that was contrary to *Strickland* and reasonably applied *Strickland*'s prejudice prong. A certificate of appealability brings Mr. Bailey to this court.

Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, *Burt v. Titlow*, 571, U.S. —, 2013 WL 5904117 at *4 (U.S. Nov. 5, 2013), federal law erects a high deferential standard—

indeed, a "doubly deferential standard," *id.* at \*2—for claims that a state court erred. Federal habeas relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013). Mr. Bailey must show that the Illinois courts' disposition of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Mr. Bailey argues for relief under all three exceptions to § 2254(d)'s bar on relitigation: he says the Illinois Appellate Court (1) acted contrary to *Strickland v. Washington*; (2) unreasonably applied *Strickland v. Washington*; and (3) based its decision on an unreasonable determination of the facts. Different standards govern these three exceptions. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). A decision is "contrary to" clearly established federal law if the rule the decision applies differs from governing law set forth in Supreme Court cases. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision involves an "unreasonable application" of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A decision "involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the

evidence." *Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)).

Mr. Bailey contends that while the Illinois Appellate Court correctly identified *Strickland* as the governing Supreme Court precedent, that court actually applied a standard that required him to show that the outcome of the proceedings definitely would have been—not could have been—different. We don't read the Illinois Appellate Court's decision that way.

To establish prejudice from his attorney's failure to move for discovery, Mr. Bailey had to show a reasonable probability that, had his attorney moved for discovery, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. at 694. The Illinois Appellate Court expressed the proper standard when it said, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Bailey*, 872 N.E.2d at 1027 (quoting *Strickland*, 466 U.S. at 694). A petitioner needn't prove by a preponderance of the evidence that his attorney's failure changed the outcome, *Strickland*, 466 U.S. at 693, but the standard is only slightly below that: a possibility that is conceivable but not substantial isn't enough. *Harrington v. Richter*, 131 S. Ct. at 792.

In evaluating Mr. Bailey's prejudice argument, the Illinois Appellate Court considered various ways things might have played out at trial had Mr. Swano moved for discovery: because the prosecutor didn't know about the John Doe grand jury, she likely wouldn't have produced the transcript in response to a motion; the trial judge might not have let the prior testimony be used as impeachment by omission; the trial

judge might not have been moved to disbelieve the Adams trial testimony. Mr. Bailey says the Illinois Appellate Court required him to foreclose all of the possibilities. He misreads the opinion. The appellate court evaluated what might have happened had counsel provided constitutionally adequate representation. Such an evaluation ordinarily is an essential component of the prejudice inquiry. *See, e.g.*, *Warren v. Baenen*, 712 F.3d 1090, 1101-02 (7th Cir. 2013) ("there is simply nothing that would lead us to conclude that it is reasonably probable that the self-defense argument would have succeeded or that it would have been objectively reasonable to reject the plea deal."); *Mosley v. Atchison*, 689 F.3d 838, 851-52 (7th Cir. 2012) (upon finding failure to call witnesses fell below constitutional minimum, court immediately turned to how witnesses' testimony might have affected outcome).

Mr. Bailey argues that a reasonable fact-finder could have inferred from the Adams grand jury testimony that the reason Mr. Adams wasn't asked to say who was with Mr. Moten was that the grand jury prosecutor was aware that Mr. Adams didn't know. This, he notes, is precisely how the state post-conviction court reasoned. The issue before us, though, is whether the Illinois Appellate Court went about its business appropriately. Even if a fact-finder might have drawn the inferences Mr. Bailey posits, the *Strickland* prejudice inquiry is an objective one. A court doesn't ask whether a "particular factfinder would have found a reasonable probability from a subjective standpoint," *Gutierrez v. Anglin*, 706 F.3d 867, 871–72 (7th Cir. 2013); *Raygoza v. Hulick*, 474 F.3d 958, 964 (7th Cir. 2007), and the state appellate court didn't have to consider every conceivable effect the Adams grand jury testimony

might have had on the proceedings. *Richter v. Harrington*, 131 S. Ct. at 792; *Strickland v. Washington*, 466 U.S. at 693.

The Illinois Appellate Court did precisely what the constitutional standard demands: based on an objective look at all the evidence of record, *see Woolley v. Rednour*, 702 F.3d 411, 426 (7th Cir. 2012), it concluded that since the John Doe grand jury prosecutor hadn't asked Mr. Adams questions that would have elicited an identification of Mr. Bailey, and since Mr. Thompson's out of court statements tied Mr. Bailey to the crimes, Mr. Adams's omitted grand jury testimony had no more—and maybe less—probative value than the stipulations that were presented at trial. Those stipulations disclosed that Mr. Adams hadn't mentioned that Mr. Bailey was at the scene and hadn't mentioned hearing Mr. Bailey tell anyone to shoot, either in the interview with Officer Kelly or in his John Doe grand jury testimony. The grand jury transcript which we already have set forth, offers nothing more.

Mr. Bailey also seeks relief under § 2254(d)(2), contending that the state court's prejudice finding was based on an unreasonable determination of the facts. Federal courts presume that a state court's determination of a factual issue was correct, and a habeas corpus petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(d)(2); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Mr. Bailey's argument—that he has met that burden by raising a possibility that a fact-finder cognizant of the precise questions and answers at the John Doe grand jury session would have inferred that Mr. Adams wasn't asked about Mr. Bailey because the prosecutor asking the questions

knew that Mr. Adams didn't know anything about Mr. Bailey—falls well short of that hurdle.

Citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), Mr. Bailey argues tersely that the Illinois Appellate Court erred by looking to the sufficiency of the evidence. In *Kyles*, a case considering the related test for undisclosed exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667, 682 (1985) (reversal required "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"), the Court explained that even when sufficient evidence to convict exists with the missing information, the inquiry goes on. Assuming—without deciding—that all of the tests set forth in the *Brady/Bagley/Kyles* line of cases apply equally to the prejudice prong under *Strickland*, the Illinois Court of Appeals acted properly. The sufficiency of Mr. Thompson's statements was mentioned in evaluating prejudice, but the court didn't treat it as dispositive. *People v. Bailey*, 872 N.E.2d at 1021–22. It would seem difficult to decide prejudice under *Strickland* without evaluating the rest of the evidence.

The Illinois Appellate Court's resolution of Mr. Bailey's ineffective assistance of counsel claim is consistent with, and a reasonable application of, the constitutional standard the Supreme Court articulated in *Strickland v. Washington*, 466 U.S. 668, and contains a reasonable determination of the facts in light of the evidence presented. When the state court's decision "is one of severally equally plausible outcomes," § 2254(d) forecloses federal habeas corpus relief. *Woolley v.*

*Rednour*, 702 F.3d 702 F.3d 411, 425 (7th Cir. 2012); *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).

We AFFIRM the district court's judgment.