# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1979

FREDERICK G. JACKSON,

*Petitioner-Appellee,*

*v.*

MATTHEW J. FRANK,[1]

*Respondent-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 1587—**Lynn Adelman**, *Judge.*

———————

ARGUED SEPTEMBER 12, 2002—DECIDED NOVEMBER 6, 2003

———————

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* When Frederick Jackson told
the detective questioning him that he wanted a lawyer
"right now," the detective responded that he could not
accommodate Jackson's request and that he would have to
end the interview. The detective's statement to Jackson
was, at the very least, misleading: under Wisconsin law

———————

[1] Pursuant to Federal Rule of Appellate Procedure 43(c), Matthew
J. Frank, the current Secretary of the Wisconsin Department of
Corrections, has been substituted for Jon E. Litscher as Respon-
dent in this case.

public defenders are available to suspects in custody on an emergency basis. After his conversation with the detective, Jackson waived his *Miranda* rights and confessed. He later moved to suppress his confession, arguing that his waiver was not voluntary due to the detective's misstatement of Wisconsin law. The Wisconsin trial and appellate courts found no *Miranda* violation, and Jackson filed a writ of habeas corpus, which the district court granted. We find that the detective's failure to follow state law does not give rise to habeas relief and the Wisconsin appellate court's decision was not objectively unreasonable in light of the Supreme Court's decision in *Duckworth v. Eagan*, 492 U.S. 195 (1989). Although we share many of the district court's concerns about Jackson's waiver of his *Miranda* rights, we find that the district court exceeded the limits imposed on federal habeas review, and we therefore reverse its grant of Jackson's petition.

## I. BACKGROUND

On May 29, 1997, Milwaukee police officers investigating a report of gunshots observed Frederick Jackson's car speeding. They pulled Jackson over and noticed a white substance all over his mouth and teeth, and, after they asked him about it, Jackson drove away. Jackson was quickly stopped, arrested, and taken to the hospital.

Four days after he was arrested,[2] Jackson was inter-viewed by Milwaukee police detective James Guzinski. The

---

[2] The record does not explain how long Jackson remained in the hospital or why he was not interviewed for four days after he was arested. We are similarly left in the dark as to the reason he did not receive a probable cause hearing until June 5, well past the presumptive 48-hour limit set out in *County of Riverside v. McLaughlin*, 500 U.S. 44, 54-60 (1991), but Jackson does not raise a *Riverside*-related claim in this appeal.

detective advised Jackson of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Jackson then asked the detective if he could arrange for him to see a lawyer. According to Detective Guzinski's testimony at the state suppression hearing, he responded:

> At that point I told him I could not do that, and that I was going to end my interview with him. He stated he wanted to talk to me now. I stated that he would have to waive his right to an attorney and he would have to be very clear about that which he stated yes, he did want to do that because he wanted to cooperate in giving a statement and answering my questions.

Detective Guzinski further testified as follows:

> Q: . . . After you read him his rights and asked him if he wanted to make a statement, what exact words do you recall him speaking to you?
>
> A: He asked me if he could have a lawyer right now.
>
>       . . .
>
> Q: Was your sense of that whether you personally could get him a lawyer—you were physically able to go and summon a lawyer for him, or was he asking that someone bring him a lawyer?
>
> A: His intent to me was to have a lawyer present there, then and there, right now, and if I could arrange for that.
>
> Q: And you said no, I can't, basically?
>
> A: That's correct.
>
>       . . .
>
> Q: Okay. Could you as a matter of actual fact have gotten on the phone at that moment and tried to

> summon an attorney from the Public Defender's or somewhere else?
>
> A: No.
>
> Q: Why not?
>
> A: I had no phone. I'm in a locked room. I have no access to any of these things.
>
> Q: You were at the Criminal Justice Facility?
>
> A: That is correct.
>
> Q: And you had no access to a phone to call anyone?
>
> A: I had no access to leave the room.
>
> Q: You had no way to get him a lawyer at that point?
>
> A: No.

According to his testimony, the detective then described to Jackson the procedure by which public defenders are assigned once charges are established, and Jackson responded again that he would like a lawyer but also wanted to talk with the detective. Detective Guzinski testified that the conversation continued as follows:

> A: I then told him I couldn't talk to him now because he wished an attorney.
>
> Q: Did you then get up and begin to leave the room?
>
> A: No.
>
> Q: What did you do?
>
> A: I paused for a few minutes, and then he re-initiated conversation with me, and at that point is when he replied to me that he wished to talk to me now, and that's when I re-initiated whether or not he was going to waive his right to an attorney, and

> that's when he replied yes he would, and then I pro-
> ceeded to go through the thing with the questions
> about the occurrence.

In fact, the detective's statement about the availability of a public defender did not accurately describe state law.[3] Wisconsin regulations provide that public defenders are available to individuals in custody prior to their being charged on an emergency basis, 24 hours per day including weekends and holidays. WIS. ADMIN. CODE § PD 2.03(2). Moreover, the public defender must have immediate access in person or by phone to any individual held in custody, *id.* § 2.03(3), and individuals "who indicate at any time that they wish to be represented by a lawyer, and who claim that they are not able to pay in full for a lawyer's services, shall immediately be permitted to contact the authority for indigency determinations. . . ." WIS. STAT. § 967.06.

Jackson filed a motion to suppress his confession, arguing that he did not knowingly and voluntarily waive his *Miranda* rights. After his motion was denied, Jackson pled guilty to conspiracy to posses cocaine with intent to deliver, *see* WIS. STAT. §§ 961.41(1)(cm); 961.48, and was sentenced to eight years in prison. He appealed the denial of his motion to suppress to the Wisconsin Court of Appeals, which affirmed the judgment of the trial court and found Jackson's waiver was knowing and voluntary. *See State v. Jackson*, 600 N.W.2d 39 (Wis. Ct. App. 1999). The Court of Appeals relied on the Supreme Court's holding in

---

[3] Wisconsin argues that the detective's statement was not necessarily incorrect because there is no evidence that an attorney could have been on the scene immediately. We do not share this overly-literal interpretation of Jackson's request for a lawyer "right now," and we assume, as did the Wisconsin Court of Appeals, that the detective's response to Jackson was a misstatement.

*Duckworth*, gleaning from the opinion that "all a person in custody need be told is that he or she does not have to talk to the police until that person has a lawyer," *id.* at 45 n.2, and finding that the directive was complied with in Jackson's case. One judge dissented from the appellate court's decision, commenting that *Duckworth* was distinguishable from Jackson's case and the panel opinion did not comport with *Miranda*. Jackson's petition for review to the Wisconsin Supreme Court was denied.

Jackson then sought a writ of habeas corpus in federal court under 28 U.S.C. § 2254. The district court granted Jackson's petition, finding that Jackson had not voluntarily waived his *Miranda* rights. Following the lead of the dissenting Wisconsin appellate judge, the district court found *Duckworth* distinguishable and the failure to suppress the confession to have violated *Miranda*. After granting his petition, the district court released Jackson from custody pursuant to Federal Rule of Appellate Procedure 23. At that time, according to the district court, Jackson had only four months left to serve on his sentence. The state of Wisconsin appeals the judgment of the district court.

## II. ANALYSIS

The scope of our review of the Wisconsin Court of Appeals' decision is strictly limited by the standard for habeas corpus cases promulgated by Congress in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. Under the relevant provisions of the AEDPA, an application for a writ of habeas corpus may not be granted unless adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). Jackson does not suggest that the decision of the Wisconsin appellate court was "contrary to" clearly established federal law, but instead contends that it unreasonably applied clearly established federal law to his case. This is a difficult standard to meet; "unreasonable" means "something like lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). We have held that under this criterion, habeas relief should not be granted if the state court decision can be said to be one of several equally-plausible outcomes. *Boss v. Pierce*, 263 F.3d 734, 742 (7th Cir. 2001). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 123 S.Ct. 1166, 1175 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 411, 409 (2000)).

Within the framework of § 2254(d)(1), we review the district court's grant of the petition de novo. *Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir. 2001). And "[w]hether the state court's holding involved an 'unreasonable application' of clearly established federal law, as determined by the Supreme Court, is a mixed question of law and fact that we traditionally also review de novo but with a grant of deference to any *reasonable* state court decision." *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999) (emphasis in original).

Jackson argues that the Wisconsin appellate court unreasonably applied *Miranda v. Arizona*, 384 U.S. 436 (1966), when it affirmed the rejection of the motion to suppress his confession. In *Miranda*, the Court held that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] . . . states that he wants an attorney, the

interrogation must cease. . . ." *Id.* at 473-74. "*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).[4] A defendant may waive effectuation of the rights articulated in *Miranda* "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. "When a *Miranda* waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was involuntary as a matter of law." *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996) (citations omitted). The parties do not disagree about the factual circumstances surrounding Jackson's waiver, and neither the Wisconsin Court of Appeals nor the parties on appeal

---

[4] Under *Edwards*, "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. Jackson does not contest that he reinitiated the conversation with the detective, even after the detective indicated that he would not interrogate Jackson following his request for counsel. On the other hand, the detective admits that he did not leave the interrogation room immediately after Jackson invoked his right to counsel, but the only testimony provided about this brief period of time indicates that the detective was gathering his materials and preparing to leave the room. We do not disagree with the Wisconsin Court of Appeals and district court's conclusions that, given this record, no *Edwards* violation occurred here. To the extent Jackson's decision to resume communication with the detective may have been based on the detective's misstatement about the provision of an attorney, we examine that argument in our *Miranda* discussion.

focus on the historical components of Jackson's waiver, such as his intellect, understanding, or physical condition.[5]

Instead, Jackson points to the detective's misstatement of Wisconsin law as the crux of his claim that his waiver was involuntary. Closer examination of Jackson's argument reveals that it rests on two distinct legal bases for relief: 1) the detective misstated the availability of a public defender under Wisconsin law, and 2) the detective's statement may have misled Jackson to believe that he did not have a right under the Fifth Amendment to have counsel present during interrogation.

We begin with Jackson's request for relief under Wisconsin law. Although the detective may have failed to follow state law by not allowing Jackson to contact the public defender's office and mischaracterized the provisions of the law, review of a habeas petition by a federal court is limited to consideration of violations of federal law or the United States Constitution. *See* 28 U.S.C. § 2254(a) (An application for a writ of habeas corpus will be entertained "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); *Williams v. Taylor*, 529 U.S. 362, 379 (2000) (explaining that federal courts have an independent responsibility to interpret federal law); *Gilmore v. Taylor*, 508 U.S. 333, 342

---

[5] The Wisconsin trial court judge, when ruling on Jackson's motion to suppress, observed: "I see these—this defendant I think—it's something more than just being informed that he's been through this in the past. I think that this is a fairly intelligent defendant we have here. I think that he—and he made some conscious choices which were his to make and so that it was a knowing and intelligent waiver." Although they are not challenged here, we note that on habeas review, "[t]he state court's historical findings as to the petitioner's knowledge, understanding, and determination . . . are . . . entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). . . ." *Henderson*, 97 F.3d at 946.

(1993) (recognizing that instructions containing error of state law do not give rise to federal habeas relief). Neither *Miranda* nor any other provision of federal law requires a public defender to be immediately available to a suspect during interrogation. *See Miranda*, 384 U.S. at 474 (noting that police stations are not required to have a "station house lawyer" present at all times to advise prisoners). Thus, to the extent Jackson's petition alleges violations of protections guaranteed under state law that are more generous than those required under federal law, we may not enforce these state law provisions through habeas relief.

Jackson's more substantial claim is that the detective's statement, beyond its inaccuracy under state law, clouded his understanding of the Fifth Amendment right recognized in *Miranda* to have counsel present during interrogation, making his subsequent waiver involuntary. Unfortunately, as the Wisconsin Court of Appeals found, Jackson's argument runs headlong into the Supreme Court's decision in *Duckworth v. Eagan*, 492 U.S. 195 (1989). In *Duckworth*, the Court held that when a suspect was informed that he would be provided an attorney "if and when [he] went to court," his subsequent waiver under *Miranda* was voluntary. *Id.* at 203-04. In coming to this conclusion, the Court rejected the argument that the warning may have suggested to the accused that he could not have counsel present until he went to court, finding that the argument misapprehended the effect of the phrase on the suspect. *Id.* The Court noted that "the initial warnings given to respondent touched all of the bases required by *Miranda*," *id.* at 203, and explained that "*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Id.* at 204. In *Duckworth*, the warning given by the officer accurately described the procedure for appointment of counsel in

Indiana, the state in which the incident occurred. In approving the officer's conduct, the Court made clear that, as was the case in Indiana, "[i]f the police cannot provide appointed counsel, *Miranda* requires only that police not question a suspect unless he waives his right to counsel." *Id.*

In spite of the many similarities between this case and *Duckworth*, Jackson argues that the accuracy of the Indiana officer's statement under state law clearly distinguishes *Duckworth* from this case. He argues that, unlike the situation before the Court there, in this case the police could have provided counsel, and therefore the detective's remarks violated *Miranda*. While the Court in *Duckworth* certainly noted the accuracy of the officer's statement under state law, it is far from clear that the Court's conclusion rested on that fact. The Court did not explain, for example, how, if this were so, differences in the provision of public defenders under state law should affect a petitioner's understanding and exercise of his federal constitutional rights. Instead of looking to provisions of state law, the Wisconsin Court of Appeals found significant under *Duckworth* the fact that Jackson, like Duckworth, received warnings that comported with *Miranda*. The court's focus receives support from language in *Moran v. Burbine*, in which the Court stated that: "[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." 475 U.S. 412, 422-23 (1986). We acknowledge that "[i]n certain circumstances, the Court has found affirmative misrepresentations by the police sufficient to invalidate a suspect's waiver of the Fifth Amendment privilege," *Colorado v. Spring*, 479 U.S. 564, 576 n.8 (1987) (holding waiver voluntary despite failure to inform suspect of potential subjects of interrogation), but

the uncertainty after *Duckworth* as to how to balance at least two factors—the veracity of an officer's statement of state law and the provision of proper *Miranda* warnings—prevents this court from concluding that the Wisconsin courts unreasonably applied clearly established federal law.[6]

Indeed, at least one other court of appeals has found that a misstatement of law does not, in and of itself, make a *Miranda* wavier involuntary. In *Soffar v. Cockrell*, 300 F.3d 588 (5th Cir. 2002) (en banc), the Fifth Circuit reviewed a habeas petition with a pre-AEDPA lens and held that a detective's misleading statements did not render a suspect's waiver involuntary. In that case, after the suspect asked about the availability of a court-appointed lawyer, the detective responded that "[i]t could take as little as a day or as long as a month," despite the fact that the municipality had a rule that suspects could not be held for more than 72 hours without being charged. *Id.* at 591.[7] After the detec

---

[6] The Supreme Court in a pre-*Miranda* case held that a factual misstatement by an officer is only one factor to be considered when examining voluntariness of a waiver under the totality of the circumstances. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969). It has not, however, since clarified whether this approach applies in cases analyzed under *Miranda*, *see United States v. Velasquez*, 885 F.2d 1076, 1088 (3d Cir. 1989) (applying *Frazier* in the *Miranda* context), nor has it explained whether cases involving legal misrepresentations rather than factual ones require different consideration.

[7] According to the detective in *Soffar*, the conversation went as follows: "Soffar asked whether he should talk to the police or obtain an attorney; [the detective] responded that 'if he was involved in the crime he should tell the detective he was in it; otherwise he should get a lawyer.' Soffar then asked how he could get a lawyer, and [the detective] asked him if he could afford a lawyer, knowing that he could not. Soffar laughed, and asked how he could get a

(continued...)

tive's statement, the suspect went on to confess to the murder of four bowling alley employees. The Fifth Circuit found the case to be analogous to other holdings in which waivers were found to be voluntary despite officers' misleading statements. *See, e.g.*, *Mueller v. Angelone*, 181 F.3d 557, 573-75 (4th Cir. 1999) (finding suspect's waiver voluntary when officer responded to suspect's question, "Do you think I need an attorney here?", by shaking his head from side to side and stating, "You're just talking to us"); *De La Rosa v. Texas*, 743 F.2d 299, 302 (5th Cir. 1984) (holding when officer told accused that "it [would] take some time" before a lawyer could be appointed, suspect's waiver was valid because he received warnings that complied with *Miranda*). Although the only definitive source of clearly established federal law under the AEDPA is Supreme Court authority, *Williams*, 529 U.S. at 379, the determination by one of our sister circuits that a misstatement of state law alone does not vitiate a *Miranda* waiver certainly makes it more difficult to conclude that the Wisconsin Court of Appeals unreasonably applied Supreme Court authority.

We do not adopt the conclusions of the Fifth Circuit here, nor do we determine whether, in our view, the detective's statements violated the Fifth Amendment. Instead, our opinion is limited to "the only question that matters under § 2254(d)(1)—whether [the] state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 123 S.Ct. at 1172. Given the similarities between this case and the Supreme Court's

---

[7] (...continued)

court-appointed attorney, and when he could get one. [The detective] responded that he did not know Harris County procedures, and guessed that it could take as little as a day or as long as a month. [The detective] knew that [Harris County] had a 72-hour rule . . . but did not tell Soffar about it. Soffar then spat into a trash can and said 'so you're telling me I'm on my own.' [The detective] remained silent." *Soffar*, 300 F.3d at 591.

decision in *Duckworth*, and the lack of clarity regarding the effect of an officer's misstatement on the voluntariness of a *Miranda* waiver, we cannot find that the conclusion of the Wisconsin Court of Appeals lies "well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762.

## III.  CONCLUSION

Accordingly, the decision of the district court is REVERSED and the case is REMANDED to the district court for entry of an order denying Jackson's petition for a writ of habeas corpus.

A true Copy:

        Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***