In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1308

ERIC T. ALSTON,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cv-00325-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 22, 2016 — DECIDED OCTOBER 18, 2016

Before BAUER, POSNER, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-appellant, Eric Alston, challenged the revocation of his probation by an administrative law judge (ALJ), claiming that certain information the ALJ learned prior to his revocation hearing created a risk of bias in violation of his due process rights. Alston's appeal was denied by the Administrator of the Wisconsin Division of Hearings and Appeals, the Dane County Circuit Court, and finally the Wisconsin Court of Appeals. After the Wisconsin Supreme

Court declined to review the case, Alston filed a petition for a writ of habeas corpus in federal district court. The district court denied the petition, holding that the Wisconsin Court of Appeals was not unreasonable in concluding that there was no impermissibly high risk of bias. We affirm.

## I. BACKGROUND

On June 28, 2010, Alston was placed on probation by the Dane County Circuit Court after his conviction on five criminal charges. Shortly thereafter, Dane County law enforcement agencies established a "Special Investigation Unit" (SIU) to monitor and offer resources to ten probationers whom they identified as "serious, assaultive offenders." In November 2011, Alston was identified for participation in the SIU program through which he was offered community resources aimed at deterring him from reoffending. Alston's participation, however, also came with the admonition that any probation violation would result in the Department of Corrections vigorously seeking full revocation of probation.

Alston was arrested on December 6, 2011, for violating his probation. On April 24, 2012, a revocation hearing was held before Beth Whitaker, an ALJ for the Wisconsin Division of Hearings and Appeals. Alston's participation in the SIU was discussed at the hearing, after which ALJ Whitaker informed the parties that she had previously attended a presentation about the program given by law enforcement members of the SIU. In explaining the presentation, ALJ Whitaker stated:

> It was two law enforcement officers, if I remember correctly, and they gave us an informational presentation. And it may have been at the request of our

agency, and it may have been initiated by someone else. I don't know, I just went along with the other [hearing examiners] in my office and we were given information about this program right around the time that it came out in the newspaper. And the summary of it as I remember it is we were told about the vast resources that were being provided to these folks that were at high risk, and that the program was intended as a last chance, and that violations should be treated as sort of a last straw. And in the case of supervision that it would be expected that they wouldn't be given another chance. In other words, [they] would be revoked, and in the case of a criminal case they would be prosecuted. What I didn't hear is that we're expected, that they expected us to revoke people when the violations weren't proven, so I think to that extent, I mean I don't think at any point that they suggested that we revoke people that hadn't done anything. So there's part of my decision making that's not relevant to what their program is about, part of it that I guess you could say is [relevant].

Alston then requested a suspension of the proceedings to allow for the substitution of a "neutral party" who had not attended this presentation. His request was denied.

ALJ Whitaker issued a written order revoking Alston's probation, and Alston appealed to the Administrator of the Division on Hearings and Appeals. The Administrator affirmed the revocation and found that ALJ Whitaker's attendance at the SIU training was not problematic. After the Circuit

Court of Dane County also affirmed the order, Alston appealed to the Wisconsin Court of Appeals.

The Wisconsin Court of Appeals rejected Alston's argument that ALJ Whitaker's attendance at the SIU training created a risk of bias that violated his due process rights. First, the court found that ALJ Whitaker was not biased in fact, citing the explanation of the SIU meeting she provided at Alston's hearing. The court then concluded that her attendance at the meeting did not create an impermissibly high risk of bias. It explained that members of the legal profession, including the judiciary, regularly attend trainings, seminars, and meetings regarding developments in legal policy and law enforcement tactics. The law enforcement officials at the SIU training did not discuss any specifics of Alston's case and provided only general information about the workings and goals of the program. The court held, therefore, that ALJ Whitaker's attendance did not create an impermissibly high risk of bias in violation of Alston's due process rights.

After the Wisconsin Supreme Court denied Alston's petition for review, he sought federal habeas relief. The district court found that the Wisconsin Court of Appeals' decision did not involve an unreasonable application of federal law nor an unreasonable determination of the facts. It held that because fair minded jurists could agree with the conclusion that ALJ Whitaker's attendance at the SIU training did not give rise to an impermissibly high risk of bias against Alston, he was not entitled to habeas relief.

## II. DISCUSSION

We review a district court's denial of a habeas petition *de novo*. *Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009) (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a federal court may only grant habeas relief if the adjudication of petitioner's claim by a state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We apply this analysis to the decision of the Wisconsin Court of Appeals, as that was the last state court that substantively adjudicated Alston's claim. *Gonzales*, 565 F.3d at 379 (citation omitted).

Alston seeks relief under all three of § 2254(d)'s exceptions. He argues that (1) the Wisconsin Court of Appeals' decision was contrary to established federal law governing his due process right to an impartial adjudicator; (2) the decision involved an unreasonable application of that body of law; and (3) the decision was based on an unreasonable determination of the relevant facts. We address each argument individually below, but first, it is important to set forth the established law governing the due process right to an unbiased adjudicator.

A fair hearing before a fair and unbiased adjudicator is a basic requirement of due process under the Fourteenth Amendment. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (citation omitted). This principle applies to administrative tribunals, *id.*

(citation omitted), and proceedings involving the revocation of probation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782–86 (1973). Due process is violated not only where an adjudicator is biased in fact, but also where a situation presents a particularly high probability of bias. *Withrow*, 421 U.S. at 47. The inquiry as to whether such a probability exists is an objective one. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 881 (2009). The question is "whether the average judge in [this] position is 'likely' to be neutral, or whether there is in unconstitutional 'potential for bias.'" *Id.* The facts showing a probability of bias must be strong enough to "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47.

## A. § 2254(d)(1) Exception for Decision "Contrary to" Clearly Established Federal Law

Alston first argues that the Wisconsin Court of Appeals' decision was "contrary to" clearly established Supreme Court precedent. Under § 2254(d)(1), a decision is "contrary to" clearly established Federal law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). This exception to AEDPA applies only if the state court decision is "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established precedent. *Id.* at 405–06.

Alston contends that the Wisconsin Court of Appeals' decision was contrary to rules established by two specific Supreme Court cases. First, he argues that the decision was contrary to *Gagnon v. Scarpelli*, 411 U.S. 778, in that the decision

did not specifically address the potential for bias as to each individual component of the revocation decision. In *Gagnon*, the Supreme Court confirmed that probationers are entitled to minimum due process rights at revocation hearings. *Id.* at 786 (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972) and extending its holdings to the probation context). In the context of determining the scope of a probationer's right to counsel at those hearings, the Court also recognized that a revocation decision has "two analytically distinct components:" (1) the determination as to whether the probationer violated a condition of probation; and (2) the determination as to whether to revoke probation or find another alternative. *Id.* at 784 (citing *Morrissey*, 408 U.S. at 479–80). Alston mistakenly relies on this recognition to argue that the state court was required, but failed to make specific and separate findings that ALJ Whitaker was not biased when deciding each of those two components. However, *Gagnon* imposes no such duty on a reviewing court and Alston cites no other authority to support that contention. The Wisconsin Court of Appeals made clear that it found no bias, nor an unconstitutional potential for bias, at any juncture of Alston's revocation hearing. That conclusion is not "diametrically different" or "mutually opposed" to any clearly established Supreme Court precedent.

Alston then argues that the Wisconsin Court of Appeals' decision was contrary to the rule from *Caperton*, 556 U.S. at 881, that the probability of bias is to be determined objectively. Alston claims that the court primarily, and improperly, focused on "actual bias." That argument is without merit. While the court did make a finding that ALJ Whitaker was not biased in fact, it also concluded "that the hearing examiner's

attendance [at the SIU meeting] did not create an impermissibly high risk of bias in violation of the due process clause." As support for that conclusion, the court cited the frequency with which members of the judiciary attend educational seminars on legal policy and the fact that the SIU meeting presented only general information. It found, objectively, that no impermissible risk of bias was presented by attendance at such a meeting. That the court found no actual bias, *in addition* to no objective risk of impermissible bias, does not render its decision contrary to clearly established federal law.

### B.  § 2254(d)(1) Exception for "Unreasonable Application" of Clearly Established Federal Law

Alston also argues that the Wisconsin Court of Appeals' decision "involved an unreasonable application" of federal law governing his due process right to an impartial adjudicator. Under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. It is not enough that a state court simply may have applied the law erroneously or incorrectly. *Id.* at 411. It must also be unreasonable, "which means something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation and citation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

On this point, Alston takes issue with three elements of the Wisconsin Court of Appeals' decision. First, he argues that the court mischaracterized the SIU meeting as simply an

"educational seminar," rather than a prejudicial encounter that created an impermissible risk of bias against him. Second, he argues that it was unreasonable for the court to rely on the fact that the specifics of his case were not discussed at the meeting. Finally, he argues that the court should not have relied on ALJ Whitaker's explanation that she would decide Alston's case impartially because her subjective assessment of her own potential bias is irrelevant.

None of these arguments is persuasive. As the Wisconsin Court of Appeals noted, members of the judiciary and other administrative adjudicators regularly attend informational programs on developments in the law and initiatives in law enforcement. The SIU meeting presented general information about a new probation initiative. Despite Alston's argument to the contrary, it was proper for the court to rely on the fact that the officers at the meeting neither identified Alston nor offered any details of his case. Because she learned nothing specific about Alston or his case, ALJ Whitaker was no more disqualified by attending that meeting than if she had learned about the SIU from a news article or bulletin. As to ALJ Whitaker's explanation at the hearing, it may be true that her own belief is not wholly instructive on the potential for bias. As was just discussed, however, the court had ample support, aside from that statement, for its conclusion that there was no unconstitutional risk of bias created by her attendance at the SIU meeting. The court's application of the law in reaching that conclusion was neither incorrect nor unreasonable. Certainly, its reasoning and holding do not lie "well outside the boundaries of permissible differences of opinion," such that habeas relief is warranted. *Jackson*, 348 F.3d at 662.

### C.  § 2254(d)(2) Exception for Unreasonable Determination of Facts

Finally, Alston argues that, under § 2254(d)(2), the Wisconsin Court of Appeals' decision relied on an unreasonable determination of the facts. Under this section, habeas relief may be granted only if the state court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (citation omitted). The decision must be "so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2008) (internal citation omitted).

Alston takes issue with the Wisconsin Court of Appeals' finding that ALJ Whitaker's explanation of the SIU meeting confirmed that she would decide Alston's case like any other. In Alston's view, ALJ Whitaker directly contradicted that assessment when she said, "there's part of my decision making that's not relevant to what their program is about, part of it that I guess you could say is [relevant]." Therefore, he argues, it was unreasonable for the court to find that she was not biased in fact.

This argument fails to overcome the deference we must afford the state court. Even if ALJ Whitaker considered some of the information she learned about the SIU as relevant to her decision, it was not objectively unreasonable for the court to find that she was not biased. No specifics about Alston or his case were presented at the meeting and there was no evidence of prejudgment on ALJ Whitaker's part. Based on the record before the court, we cannot say that its interpretation of ALJ

Whitaker's statement was arbitrary or that it ignored the clear and convincing weight of the evidence.

### III.  CONCLUSION

The Wisconsin Court of Appeals' decision was consistent with, and did not involve an unreasonable application of the relevant Supreme Court precedents, nor did it rely on an unreasonable determination of the facts before it. Therefore, we AFFIRM the district court's judgment.