In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3153

BREION S. WOODSON,

*Petitioner-Appellant,*

*v.*

BRADLEY MLODZIK,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-C-459 — **William C. Griesbach**, *Judge.*

———————————

ARGUED NOVEMBER 8, 2024 — DECIDED February 28, 2025

———————————

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Breion Woodson was convicted on firearm and drug possession charges in Wisconsin state court and received a 19 year sentence. During sentencing, the government introduced a short video taken from social media that depicts a group of men flashing guns and drugs on a street corner. The judge identified one of the men as Woodson and spoke at length about how the video impacted her

sentencing decision, especially her assessment of Woodson's character and the danger he posed to the community.

Woodson moved for a new sentencing hearing, arguing that the judge had misidentified him in the video and therefore violated his due process right to be sentenced based on accurate information. The judge denied his motion, and the Wisconsin Court of Appeals affirmed, finding that Woodson had failed to show he was not the man in the video. Having exhausted his state court remedies, Woodson sought to collaterally attack his sentence with a federal habeas corpus petition. See 28 U.S.C. § 2254. In his habeas petition before the district court, Woodson introduced evidence that was never presented in state court: booking photos that show his appearance at the time of sentencing. Though the photos suggest Woodson is not the man in the video, we may not consider them on habeas review and, accordingly, deny his petition.

I

In 2015, Breion Woodson was convicted in Wisconsin state court on one count of possession of a firearm by a person adjudicated delinquent under Wis. Stat. § 941.29(2)(b) and one count of possession with intent to deliver more than 40 grams of cocaine under Wis. Stat. § 961.41(1m)(cm)4. Prior to the sentencing hearing, the government submitted a short video it claimed was illustrative of Woodson's character and a "pattern of undesirable behavior." The video depicts a large group of adults congregating on a street corner and flashing money, guns, and drugs in the presence of children. Woodson's counsel objected to the video's relevance, arguing that it was unrelated to his convictions, but the objection was overruled.

At approximately 3 minutes and 30 seconds, the video depicts a man sitting in a car wearing a bandanna, large sunglasses, and a gold grill that covers his teeth. The judge identified this man as Woodson and asked the parties if they agreed. The government readily agreed, but Woodson's counsel, refusing to take a position on anything related to the video, neither denied nor conceded it was Woodson. Beyond this exchange, no witnesses or other evidence confirmed that the man in the video was Woodson.

The judge imposed a sentence of 19 years of incarceration and 10 years of extended supervision. The judge spoke at length about how the video influenced her sentencing decision, explaining that it not only reflected poorly on Woodson's character but also showed that he had "an ongoing connection to guns and drugs" and that "the need to protect the community specifically from [him] at this point is high." Woodson filed a post-conviction motion for a new sentencing hearing, claiming that his sentence had been based on improper factors because he was not the man in the video. The judge denied his motion, explaining that she was "in an ideal position to identify the defendant," having observed him during hearings and the trial.

Woodson appealed to the Wisconsin Court of Appeals, arguing that the judge's misidentification violated his due process right to be sentenced based on accurate information. In support of his misidentification claim, Woodson raised several arguments, including that the risk of misidentification was high because many young Black men in Milwaukee, including others in the video, wore similar accessories; that the judge's casual familiarity with Woodson from prior court proceedings did not mean she could reliably identify him in the

different context of the video; and the fact that the man in the video appeared for only a few seconds. Woodson also cited social science research on the inaccuracy of cross-racial identifications (the judge who identified Woodson is white, while Woodson is Black). The court rejected Woodson's appeal, however, reasoning that casting doubt on the accuracy of the identification was not the same as proving that Woodson had, in fact, been misidentified.

The Wisconsin Supreme Court denied Woodson's petition for review, and having exhausted his state court remedies, Woodson sought federal habeas relief in the Eastern District of Wisconsin. In his habeas petition, Woodson produced—for the first time—booking photos that show how he looked in 2015, the year he was sentenced. Woodson's appearance in these photos differs markedly from that of the man in the video. Most notably, the photos reveal that Woodson has a large, prominent neck tattoo, while the man in the video does not.

Though it acknowledged that the photos of Woodson and the man on the video did not appear to be the same person, the district court concluded that it could not consider the photos because they were never presented in state court. The district court then denied Woodson's habeas petition, finding the state appellate court's decision was not based on an unreasonable determination of the facts in light of the evidence before it. This appeal followed.

II

We review the district court's denial of a habeas petition de novo. *Alston v. Smith*, 840 F.3d 363, 367 (7th Cir. 2016). The scope of our review is dictated by 28 U.S.C. § 2254, as

amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, habeas relief is unavailable for claims adjudicated on the merits in state court unless the state court's resolution of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). We apply this analysis to the decision of the last state court to substantively adjudicate the merits of a petitioner's claim—here, the Wisconsin Court of Appeals. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

Invoking § 2254(d)(2), Woodson contends that the decision of the Wisconsin appellate court rested on an unreasonable determination of the facts because he is not the individual in the video. When a petitioner seeks relief under § 2254(d)(2), we evaluate the reasonableness of the state court's decision based on "the evidence presented in the State court proceeding." We presume all factual determinations made by the state court are correct unless this presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). And we will not find unreasonableness where "fairminded jurists could disagree on the correctness of the state court's decision." *Cal v. Garnett*, 991 F.3d 843, 848 (7th Cir. 2021) (quotation omitted).

If this standard for relief appears difficult to meet, "that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference given to state court decisions under § 2254 "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction." *Id.* (quotation omitted).

A

The booking photos are the only direct evidence supporting Woodson's misidentification claim, but they were never presented in state court. On appeal, Woodson argues that we may nevertheless consider the photos under the actual innocence exception, an equitable exception to procedural default. Woodson does not claim innocence with respect to his firearm and drug convictions; rather, he argues that the actual innocence exception enables him to introduce new evidence of his misidentification to prove he is "innocent of" the sentence he received.

1

The actual innocence exception excuses procedural default and thus does not apply to petitions subject to § 2254(d), the provision of AEDPA that governs claims "adjudicated on the merits in State court proceedings." Woodson characterizes his failure to present the photos in state court as procedural default. But procedural default concerns claims—not evidence—and it occurs when a petitioner's failure to comply with procedural or timely filing rules leads him to "exhaust his state remedies without obtaining any decision on the merits of his federal constitutional claim." *Mills v. Jordan*, 979 F.2d 1273, 1276 (7th Cir. 1992) (quoting Charles A. Wright, et al., 17A *Federal Practice and Procedure* § 4266 at 433 (2d ed. 1988) (cleaned up); see also *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) ("Under [the procedural default] doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts consistent with [the State's] own procedural rules.") (quotations omitted). A claim subject to § 2254(d) is, by definition, not procedurally defaulted. Indeed, Woodson's constitutional claim *was* heard on the merits. He

was not barred from bringing his due process misidentification claim in state court, nor does he argue that the photos give rise to a new claim on habeas review. While the failure to develop material facts in state court was, at one time, treated similarly to procedural default, *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 7–8 (1992), *Keeney* was abrogated by AEDPA, and the equitable exceptions that excuse procedural default no longer apply where a petitioner has failed to develop the record in state court. See 28 U.S.C. § 2254(e)(2); see also *Shinn*, 596 U.S. at 381, 384–85.

Federal habeas courts are not meant to be "an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) (quotation omitted). Accordingly, Congress has expressly limited our review under § 2254(d)(2) to "the evidence presented in the State court proceeding." Woodson argues that the actual innocence exception permits us to ignore the text of § 2254(d)(2) and consider new evidence in assessing the reasonableness of the state court's merits adjudication. Such an application would stretch the exception far beyond its traditional boundaries, transforming what is meant to be a "very narrow exception" into a sweeping mechanism for obtaining federal habeas review. *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992). It would turn the deferential posture of § 2254(d) on its head, enabling a petitioner who withholds key evidence from state courts to "overcome an adverse state-court decision" and effectively receive de novo federal review of their claim. *Cullen*, 563 U.S. at 182. It is one thing to apply an equitable exception to excuse procedural default—itself an equitable doctrine—but it is quite another to overlay such an exception onto clear and unequivocal statutory limits. Courts are empowered to carve out

exceptions to equitable doctrines when necessary. *Dretke v. Haley*, 541 U.S. 386, 394 (2004). But we cannot ignore statutorily imposed habeas requirements in favor of judge-made rules. *Shinn*, 596 U.S. at 385 ("Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect.") (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 402 (2013) (Scalia, J., dissenting)); see also *Jones v. Hendrix*, 599 U.S. 465, 491 (2023) ("How to balance [finality interests] against error correction is a judgment about the proper scope of the writ that is normally for Congress to make.") (cleaned up) (quotations omitted). Because Woodson's claim was not procedurally defaulted and we have no power to override AEDPA's limits on our review of nondefaulted claims, the exception cannot apply to his claim under § 2254(d)(2).

2

Even if Woodson's claim were procedurally defaulted, we would still be barred from considering the photos by § 2254(e)(2), which "continues to have force" even where § 2254(d) does not prevent habeas review. *Cullen*, 563 U.S. at 185. Section 2254(e)(2) directs that when a petitioner "has failed to develop the factual basis of a claim in State court proceedings," a federal habeas court shall not hold an "evidentiary hearing on the claim" unless a petitioner can make two showings. First, the petitioner must demonstrate that their claim relies on either "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i) & (ii). Second, the petitioner must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2254(e)(2)(B). Though strict, these requirements apply only when, as here, the petitioner is responsible, or "at fault," for the failure to develop the record. *Shinn*, 596 U.S. at 382.

At oral argument, Woodson claimed that § 2254(e)(2) is irrelevant, as he is seeking to introduce new evidence, not hold an evidentiary hearing. But this provision also governs attempts to expand the record in federal court to "achieve the same end as an evidentiary hearing." *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001); see also *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (observing that § 2254(e)(2)'s "restrictions apply a fortiori when a prisoner seeks relief based on new evidence *without* an evidentiary hearing"); *Shinn*, 596 U.S. at 389 ("[W]hen a federal habeas court ... admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.").

It is likewise well established that petitioners may not evade the requirements of § 2254(e)(2) by invoking the actual innocence exception. Congress has explicitly "constrained the application of the exception" in this context by incorporating a modified version of the actual innocence rule into AEDPA's text. *McQuiggin*, 569 U.S. at 395–97. As the Supreme Court has explained, "we have no power to layer a miscarriage-of-justice or actual-innocence exception on top of the narrow limitations already included in § 2254(e)(2)." *Shinn*, 596 U.S. at 385.

Woodson bears the fault for the failure to develop the record in state court, so § 2254(e)(2) governs whether he may introduce his new evidence on habeas review. But Woodson

cannot satisfy the requirements of this provision. His claim does not rest on a new rule of constitutional law, nor does it rely on a "factual predicate" that could not have been discovered earlier through due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) & (ii). The booking photos Woodson now submits existed at the time of his state court appeal, and he does not explain why he could not have submitted the photos to support his misidentification claim in state court.

Woodson faces an even more fundamental barrier, however: § 2254(e)(2) only permits the introduction of new evidence to establish innocence of "the underlying *offense*." § 2254(e)(2)(B) (emphasis added). Accordingly, a petitioner may not introduce new evidence under § 2254(e)(2) if they are claiming innocence with respect to a sentence. Cf. *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) (holding that similar language in 28 U.S.C. § 2255 forecloses the possibility of actual innocence claims directed at sentences rather than convictions).

B

Having established that we may not consider the booking photos, we evaluate Woodson's habeas petition in light of the evidence he presented in state court. On appeal, Woodson renews his argument that social science research supports his misidentification claim, citing studies that show it is hard to make accurate identifications from photos and videos and that cross-racial identifications are particularly unreliable. He also urges that other relevant facts impeded an accurate identification in this case, including the poor video quality and the clothing and accessories worn by the individual in the video.

The Wisconsin Court of Appeals did not unreasonably determine the facts in light of the evidence presented to it. We do not dispute that any of the factors Woodson identifies might make accurate identifications more difficult as a general matter. But Woodson presented no evidence in state court to directly rebut the conclusion that he was the man in the video. To establish that his sentence was based on an unreasonable determination of the facts, Woodson must do more than merely show that a risk of misidentification existed. To prevail, he must demonstrate by clear and convincing evidence that the identification actually *was* inaccurate. The facts Woodson presented to the Wisconsin Court of Appeals were simply not sufficient to make this showing.

AFFIRMED