In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 21-3239

MARK JOHNSON,

*Petitioner-Appellant,*

*v.*

MARK R. SEVIER, Warden,

*Respondent-Appellee.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-2290 — **James R. Sweeney II**, *Judge.*

---

ARGUED SEPTEMBER 5, 2024 — DECIDED MAY 30, 2025

---

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit
Judges*.

LEE, *Circuit Judge*. An Indiana jury convicted Mark John-
son of felony rape, felony criminal confinement, and misde-
meanor battery. Johnson appealed, arguing that the court's
exclusion of certain DNA evidence at trial and the State's de-
struction of the victim's blood sample before toxicology test-
ing violated his Fourteenth Amendment due process rights.
The Indiana Court of Appeals vacated his convictions for

criminal confinement and battery on double jeopardy grounds but affirmed the rape conviction. Johnson then filed a petition to transfer to the Indiana Supreme Court, which was denied.

Johnson subsequently pursued post-conviction review in state court and, after exhausting his state court remedies, he sought federal habeas review under 28 U.S.C. § 2254. The district court denied Johnson's habeas petition, concluding that his DNA-related claim was procedurally defaulted and the state court reasonably applied federal law when determining that the State had not acted in bad faith when discarding the blood sample. We affirm.

## I

### A. The Underlying Incident[1]

A.T. visited Johnson's home in Indianapolis to smoke marijuana. When she arrived, Johnson told her that he did not have any and that someone would bring some later. The two started talking on Johnson's couch. Johnson smoked crack cocaine and drank beer; A.T. did not.

At some point, Johnson began to remove his clothes, and A.T. stood to leave. Johnson then grabbed A.T.'s arm and threw her on the couch. A.T. yelled for him to stop. Undeterred, Johnson pulled down her pants, held her arms above her head, and forced her to have vaginal intercourse, ignoring

---

[1] We adopt the facts set forth in the opinion of the Indiana Court of Appeals because they are presumed to be correct, and Johnson has not rebutted this presumption by clear and convincing evidence. *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018).

her pleas. After some time, Johnson stopped, and A.T. pulled her clothes on and left Johnson's house.

While on the way to the hospital, A.T. saw a parked police car and reported what had happened. Testing later revealed A.T.'s DNA on Johnson's penis and fingers and Johnson's DNA on A.T.'s neck. DNA from three unidentified males also was recovered from A.T.'s underwear. No biological material from Johnson was recovered from A.T.'s genital area or clothing.

The police arrested Johnson and questioned him about A.T.'s allegations. During the interview, Johnson repeatedly asked whether A.T. would be tested for drugs. Detective Laura Smith, the interviewing officer, assured Johnson that A.T. would indeed be tested at the hospital. Detective Smith would later testify that she made the statement based on her belief that drug-testing victims of sexual assault was standard practice. But the protocols had changed, and after A.T.'s blood sample was tested for DNA, it was discarded before any toxicology testing was done.

**B. Procedural History**

Believing that the State's disposal of the blood sample constituted willful destruction of material evidence, Johnson filed a pretrial motion with the trial court to dismiss the charges against him. According to Johnson, the blood sample would have shown that A.T. was intoxicated at the time of the incident, thereby undermining her credibility. After an evidentiary hearing, the court found that the police had not acted in bad faith when disposing of the blood sample and denied Johnson's motion.

Johnson also sought leave to introduce evidence at trial that the DNA of other men was found on A.T.'s underwear. As he saw it, the evidence indicated that A.T.'s injuries may have been caused by prior sexual activity with other men. The court denied this request as well. And, after a trial, the jury found Johnson guilty of Class B felony rape, Class D felony criminal confinement, and Class A misdemeanor battery.

Johnson appealed all three convictions to the Indiana Court of Appeals on various grounds. First, he argued that the convictions violated double jeopardy principles under the Indiana Constitution. Next, he contended that the trial court had violated his due process rights both by denying his motion to dismiss and barring the DNA evidence of other men.

For reasons not relevant here, the Indiana Court of Appeals agreed that Johnson's convictions for criminal confinement and battery were barred by double jeopardy. The appellate court, however, affirmed the rape conviction. In doing so, the court reasoned that A.T.'s blood sample constituted, at most, only potentially useful evidence (as Johnson himself had conceded) and that Johnson had failed to establish that the police had acted in bad faith when disposing of the blood samples, thereby dooming his due process claim. The court also affirmed the trial court's exclusion of the other-men DNA evidence under state evidentiary rules.

Having failed before the appellate court, Johnson then petitioned for transfer to the Indiana Supreme Court, raising only his claim that the trial court had erred by denying his motion to dismiss based on the failure to preserve A.T.'s blood sample. His petition was denied.

After exhausting his state remedies, Johnson petitioned for a writ of habeas corpus in the district court. As relevant here, the district court denied the petition, finding that he had procedurally defaulted his claim related to the trial court's exclusion of the DNA evidence by failing to raise it in his petition for transfer to the Indiana Supreme Court. Additionally, the district court held that the Indiana Court of Appeals reasonably applied United States Supreme Court precedent when it determined that the police had not acted in bad faith when it disposed of A.T.'s blood sample without testing it for drugs. This brings us to this appeal.

## II

Section 2254(d) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, precludes federal courts from granting writs of habeas corpus to an individual in custody pursuant to a state court judgment unless the judgment (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) is "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

As to the first category, a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a [Supreme Court decision] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). Moreover, a state court decision involves an "unreasonable application" of clearly established federal law when it applies Supreme Court precedent to the facts in an objectively unreasonable manner, *id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013), such that the application lies "well outside the boundaries of

permissible differences of opinion." *Alston v. Smith*, 840 F.3d 363, 369 (7th Cir. 2016) (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003)).

As to the second category, a state court decision is based on an "unreasonable determination of the facts" if it "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)). This is a high hurdle—the decision must be "so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Alston*, 840 F.3d at 379 (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2008)).

With these principles in mind, we turn to Johnson's petition, reviewing the district court's factual findings for clear error and its legal conclusions *de novo. See Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005) (citing *Richardson v. Briley*, 401 F.3d 794, 799 (7th Cir. 2005)). Furthermore, we look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc) (internal quotation marks omitted).

## A. Exclusion of DNA Evidence

We start with Johnson's second claim, which challenges the state court's decision to bar him from presenting the DNA evidence of other men found on A.T.'s underwear. The district court concluded that the claim was procedurally defaulted because Johnson failed to include it in his petition to transfer to the Indiana Supreme Court. We agree.

Section 2254 instructs that an "application for a writ of habeas corpus … shall not be granted unless … the applicant has

exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The statute specifies that an applicant has not exhausted available remedies if the applicant has "the right under the law of the State to raise, *by any available procedure*, the question presented." *Id*. § 2254(c) (emphasis added). As such, to avoid procedural default, we have required a habeas petitioner to "raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004).

Johnson insists that his DNA evidence claim is not subject to procedural default because he mentioned the DNA evidence twice in his petition to transfer. First, his petition related in a footnote that the Indiana appellate court had affirmed the trial court's exclusion of the DNA evidence. Second, in describing the evidence presented at trial, the petition noted that "[n]o biological material belonging to Johnson" was found anywhere on A.T.'s person or clothing.

The problem is that these statements are purely descriptive in nature—they do not, alone or in conjunction, present an argument that the trial court's exclusion of the DNA evidence violated Johnson's due process rights. *See Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (stating that, "[i]n the interests of federal-state comity, both the operative facts *and* controlling law must be put before the state courts") (emphasis added). Indeed, the sole issue presented to the Indiana Supreme Court in his brief was that the state had violated his due process rights by failing to preserve A.T.'s blood sample for toxicological testing. Johnson's petition to transfer, plainly read, omits any argument regarding the trial court's exclusion of the DNA evidence.

Nevertheless, Johnson urges us to save his claim from procedural default. In his view, despite the omission of this issue from his petition to transfer, the Indiana Supreme Court had "the opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. 1, 4 (1981). In support, he relies on a single case, *Savage v. State*, 655 N.E.2d 1223 (Ind. 1995). There, the Indiana Supreme Court noted that it would address on appeal an issue not raised in an appellant's petition for transfer because, "'[u]pon grant of transfer, the appeal is fully before [the Supreme] Court, and [the Court] face[s] all of the issues originally raised before the Court of Appeals.'" *Id*. at 1224 (quoting *Kimberlin v. DeLong*, 637 N.E.2d 121, 123 (Ind. 1994)). Under Johnson's reading of *Savage*, because the Indiana Supreme Court could have considered the DNA issue on the merits, it had the "opportunity" to correct the purported constitutional violation, thereby preserving the claim from procedural default.

But the procedural posture in *Savage* was markedly different from that here. In *Savage*, the petition to transfer was granted, thereby triggering the Indiana Supreme Court's authority to review all claims raised before the court of appeals. By contrast, the petition here was denied solely on the issues Johnson actually raised in his brief.

Our decision in *Hinesley v. Knight* is instructive. 837 F.3d 721 (7th Cir. 2016). There, although the petitioner presented an ineffective-assistance-of-counsel claim to the Indiana Court of Appeals, his petition to transfer to the Indiana Supreme Court (which was denied) did not include the claim, only "mention[ing] *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] in passing." *Id*. at 731, 735–36. Concluding that "Hinesley never presented a discernible argument of cumulative

ineffectiveness to the Indiana Supreme Court" in his petition to transfer, we affirmed the district court's holding that he had procedurally defaulted that claim. *Id*. at 736. The same holds true here.

Because Johnson did not fairly present his exclusion-of-DNA-evidence claim to the Indiana Supreme Court, the district court correctly determined that this issue was procedurally defaulted, precluding federal review. And since Johnson concedes that he cannot show cause for that default, we may not consider the merits of the claim.

**B. A.T.'s Blood Sample**

Next, Johnson argues that the disposal of A.T.'s blood sample without toxicological testing violated his right to due process under the Fourteenth Amendment. The crux of his argument rests on his belief that the blood sample was potentially exculpatory.

In *Brady v. Maryland*, the Supreme Court held that the suppression of materially exculpatory evidence violates due process "irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Supreme Court later clarified in *Arizona v. Youngblood* that where evidence is only "*potentially* exculpatory," the police's failure to preserve that evidence only violates due process when a criminal defendant can show "bad faith on the part of the police." 488 U.S. 51, 58 (1988) (emphasis added) (holding that the police did not violate the due process rights of a defendant accused of sexual assault when they failed to preserve semen samples that "might have exonerated the defendant" because the defendant failed to show bad faith). Because Johnson conceded on direct appeal that the blood sample was only "potentially

useful evidence," under *Youngblood*, he must show that the police acted in bad faith to save his due process claim.

When addressing this issue, the Indiana Court of Appeals held that it "clearly was within the trial court's discretion" to conclude that Johnson failed to show the police had acted in bad faith when disposing of the sample. The appellate court explained that the trial court credited Detective Smith's testimony that, at one time, it was "standard policy to have a toxicology analysis prepared on victims reporting sexual assault, but that the policy had been changed without her knowledge." *Id*. The trial court, the Court of Appeals noted, also relied upon Detective Smith's actions, which included following up with the nurse who had treated A.T. to inquire about signs of intoxication (the nurse responded she did not see any such signs) as well as "sa[ying] nothing to the nurse or the crime lab telling them not to prepare such a report." *Id*. Based on this, the appellate court concluded that the failure to test A.T.'s blood for drugs "appears to have been an honest mistake" and that, "[a]t worst, the State's failure to preserve a sample of A.T.'s blood for possible toxicology testing was negligent." *Id*.

### 1. Determination of Facts

Johnson claims that the Indiana appellate court's determination of the absence of bad faith was unreasonable, because it was based chiefly on Detective Smith's testimony that the drug-testing policy had changed despite there being no corroborating evidence. In Johnson's view, the court also failed to adequately consider Detective Smith's supposed "animosity to the exculpatory evidence," pointing to her statement during her interrogation of Johnson that she did "not care if [A.T.] got high."

Although we acknowledge that additional evidence of a policy change would have bolstered Detective Smith's testimony, the absence of such corroboration does not necessitate a finding of bad faith. It was not unreasonable for the trial court to credit Smith's testimony that she had honestly believed the department's policy required a sexual assault victim's blood sample to undergo a toxicology analysis. Nor was it unreasonable for the Indiana appellate court to defer to the trial court's factual finding. Recall too that Smith had no idea that a toxicology report had not been prepared and that she did nothing to prevent the sample from being tested. Given this record, we cannot say that the Indiana court "ignore[d] the clear and convincing weight of the evidence." *McManus*, 779 F.3d at 649.

### 2. Application of Law

Next, Johnson claims that the state court committed legal error by discounting his repeated requests to the authorities that they test A.T.'s blood sample for drugs and the irreplaceable value of such evidence. According to Johnson, the Supreme Court considered these factors critical in *Youngblood* and *California v. Trombetta*, 467 U.S. 479, 489–90 (1984) (holding that law enforcement agencies did not deny defendants due process by failing to preserve breath samples of suspected drunken drivers because "the chances [were] extremely low that preserved samples would have been exculpatory" and respondents had "alternative means of demonstrating their innocence").

To be sure, *Trombetta* requires a court to ascertain whether the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed," and whether the evidence was "of such a nature that the defendant would be

unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489. And *Youngblood* observed that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 488 U.S. at 56 n.*.

Nevertheless, Johnson's repeated demands to test A.T.'s blood sample for drugs do not, by themselves, imbue the sample with "exculpatory value." Indeed, Johnson himself does not appear to regard the blood sample as actually exculpatory, but only potentially so as a means to impeach A.T.'s credibility. In this way, the discarded blood sample is closer to the discarded breath samples in *Trombetta* that had only "impeachment value" than to the unpreserved semen sample in *Youngblood* that had "the possibility of complete exoneration." *Youngblood*, 488 U.S. at 68 (Blackmun, J., dissenting). At any rate, neither *Youngblood* nor *Trombetta* stands for the proposition that knowledge on the part of law enforcement and irreplaceability of the evidence alone or in combination necessitate a bad faith finding, especially when evidence of bad faith is otherwise lacking.

On this record, the Indiana Court of Appeal's application of *Youngblood* did not deviate "well outside the boundaries of permissible differences of opinion." *Alston*, 840 F.3d at 369. Nor did the court "veer well outside the channels of reasonable decision-making about federal constitutional claims." *Dassey*, 877 F.3d at 302. Accordingly, we find no unreasonable application of clearly established federal law here.

### III

For the foregoing reasons, the judgment of the district court is AFFIRMED.