In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1741

JOEL RHODES,

*Petitioner-Appellee,*

*v.*

MICHAEL A. DITTMAN, Warden,
Columbia Correctional Institution,

*Respondent-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-C-0161 — **Lynn Adelman**, *Judge.*

ARGUED OCTOBER 1, 2014 — DECIDED APRIL 14, 2015

Before WOOD, *Chief Judge*, and RIPPLE and TINDER, *Circuit Judges*.

WOOD, *Chief Judge*. Accused of kidnapping and aggravated battery, Joel Rhodes had trouble deciding whether to take advantage of his constitutional right to counsel. After going through several lawyers, he convinced the state court that he wanted to represent himself. But shortly before his trial began in May 2007, he informed the court that he had changed

his mind and needed more time for retained counsel to prepare. The court refused to go along; it informed Rhodes that his request was untimely and that it smacked of gamesmanship. A jury convicted Rhodes, the Wisconsin Court of Appeals affirmed, and the state supreme court denied review. Rhodes then turned to the federal court for habeas corpus relief under 28 U.S.C. § 2254. The district court ordered the writ to be issued, but its ruling was stayed pending appeal. We find neither of the state courts' reasons for rejecting Rhodes's last-minute request for counsel to be unreasonable, and thus we conclude that the district court's judgment is inconsistent with the deferential standard of review that applies here. We therefore reverse.

## I

### A

This litigation stretches all the way back to 2002, when Rhodes was charged by state prosecutors with two counts of kidnapping. He retained Peter Kovac as his trial counsel. Kovac represented Rhodes well: a jury acquitted him on one count, while a different jury convicted him on the other count. Rhodes appealed the conviction, primarily on the ground that Kovac had rendered ineffective assistance, but the Wisconsin Court of Appeals (upon the state's confession of error) reversed and remanded based on a problem with the jury.

On remand, the state added a charge of aggravated battery to the information. The court appointed a public defender, Richard Kaiser, to represent Rhodes. On March 13, 2007, nearly two months before the trial was scheduled to begin, Kaiser moved to end his representation of Rhodes,

because Rhodes wanted to represent himself. The trial court held a hearing on Kaiser's motion on April 2, during which it warned Rhodes about the dangers of self-representation. It did not rule on the motion that day, however, in part because the judge wanted Rhodes and Kaiser to have more time to attempt to resolve their differences.

The hearing resumed on April 6, at which point the judge had an extensive exchange with Rhodes about his decision to proceed *pro se*. After the judge provided Rhodes and his attorney with a waiver form, Rhodes spoke again. He told the judge that he "was in the process of hiring Attorney Kovac but I don't know what happened," and noted that Kovac was in the courtroom. Rhodes said that he did not know if Kovac was "taking the case or not." This comment prompted the judge to question Kovac directly. Kovac said that Rhodes had asked him to be in court for the hearing and that in his view Rhodes was not engaging in gamesmanship or building a record for an appealable issue. Nonetheless, he added, Rhodes had not yet retained him. After receiving the completed waiver form from Rhodes, the judge again questioned Rhodes about his decision to represent himself, and Rhodes confirmed that he still wished to do so "[b]ecause I think that I can better defend myself in this case." The judge then granted Rhodes's request to proceed *pro se*.

We would not be here if that had been the end of the matter. Between the hearing we have just described and the start of the trial, Rhodes and Kovac sent a stream of correspondence to the court. On April 18, Rhodes wrote the judge a short letter informing him that he authorized Kovac "to speak on my behalf" to the judge and the prosecutor "in connection with the case that I have pending in your court."

On April 23, Kovac wrote to the court vouching for Rhodes's character, including his interests in religion and philosophy, and opining that proceeding *pro se* would be "difficult and bad" for Rhodes. Kovac explained that Rhodes had "asked me to represent him at trial," but that it would be impossible for him to prepare properly in the time remaining before May 7, the scheduled start date. Kovac asked the judge to reschedule the trial in order to allow him to prepare, to "protect [Rhodes's] Sixth Amendment right to counsel," and perhaps to prompt a plea agreement. On May 1, Rhodes chimed in with a letter to the judge, informing him of difficulties in his preparation. He mentioned that he had asked Kovac to "come in and assist" and complained about the judge's refusal to postpone the trial. Two days later Rhodes wrote the judge again to complain that the state was making his trial preparation difficult. Rhodes told the judge that he "now better appreciate[s] the difficulties of representing myself" and wanted Kovac to represent him. Finally, on May 6, Kovac again wrote to the judge, reiterating that Rhodes had asked Kovac to represent him but that Kovac did not have enough time to prepare for the May 7 trial.

The judge took note of this correspondence at the outset of trial on May 7, before jury selection. He noted that Rhodes previously had accused Kovac of ineffective assistance of counsel in a post-conviction motion. The judge found "bizarre" the fact that Rhodes was now asking the court to allow Kovac again to represent him. He reminded Rhodes that Rhodes had waived his right to counsel after a long exchange with the court. After Rhodes asked whether the judge would grant an adjournment so that Rhodes could "properly prepare," the judge replied that he was "denying the adjournment because of, specifically, your motion to al-

low you to represent yourself was heard back in March [*sic*]. You apparently had been thinking about this for some time and you said you were going to be prepared for the trial. So your motion to adjourn is denied." The judge told Rhodes he could not "have it both ways": "On the one hand you ask to represent yourself. Because of the law and what I feel was a record that established you could represent yourself, because it is your constitutional right, I allowed to you do that [*sic*]. You are not going to argue the other way now that you want someone to represent you on the day of trial." The judge later added that he thought "that there are games going on here, which I am not going to put up with," and that Rhodes's request for Kovac to serve as counsel "roughly two weeks before trial … is just not going to cut it in this Court's opinion."

At various other points during the trial, the judge refused to permit Kovac to serve as Rhodes's standby counsel, given Kovac's representations to the court that he was not prepared for the trial. The judge also rejected Rhodes's request for a computer. At one point, Rhodes told the court that his trial was "just a lost cause" and that he "revoke[d] the right to represent myself." The judge told Rhodes he was "a day late and a dollar short" and declined to change his ruling. Rhodes later made another motion for standby counsel, which the court denied. On the fourth day of trial Kovac actually sat at the counsel table next to Rhodes and asked for permission to deliver Rhodes's closing argument. The judge, after recounting the history of Rhodes's and Kovac's dealings with the court, said that he "believe[d] that this record is being manipulated." Once again, he declined to alter his ruling. The jury convicted Rhodes on both the kidnapping and aggravated battery charges.

B

After the trial court denied his postconviction motion for a new trial based on denial of his right to counsel, Rhodes appealed his conviction to the Wisconsin Court of Appeals. His primary point was that the trial court had erred in refusing to allow Kovac to represent him. The court of appeals found no merit in this argument. It described the trial court's April 2007 colloquy with Rhodes discussing his waiver of counsel as "exemplary": the judge properly warned Rhodes of the dangers of self-representation and promptly questioned Kovac at the hearing once Rhodes mentioned that he had been trying to hire Kovac. This was enough, in the appellate court's opinion, to support a finding of a deliberate waiver of the right to counsel and the assertion of the right to self-representation recognized in *Faretta v. California*, 422 U.S. 806 (1975).

As for the trial judge's refusal to allow Rhodes to reinstate Kovac as his attorney, the court of appeals concluded that the judge's two-part rationale—the timing of Rhodes's request and Rhodes's gamesmanship—was sound. First, it held that it was "[p]lainly" proper for the trial judge to believe that "an adjournment to permit the involvement of an attorney who concededly was not yet prepared to try the case would have had a significant impact on court administration, calendar management, and witness availability." It also found no abuse of discretion in the trial judge's assessment of Rhodes's tactics. It pointed out that Rhodes had made three "mutually exclusive" requests regarding his representation. The trial judge's conclusion that "Rhodes was attempting to affect the proceedings adversely by inserting a lawyer into the case who was concededly unprepared and

who Rhodes previously challenged as constitutionally inef-
fective" was a permissible one. The court of appeals thus
found that each of the trial judge's reasons independently
supported the refusal to permit Rhodes to revoke his waiver
of counsel and bring in Kovac to represent him at trial. The
court added that Rhodes did not suffer a deprivation of his
right to counsel when jail officials prevented him from visit-
ing with Kovac the weekend before trial.

## C

Rhodes filed his petition for a writ of habeas corpus un-
der 28 U.S.C. § 2254 in the Eastern District of Wisconsin in
February 2013. He made three arguments in support of his
petition: first, the Wisconsin court erred in finding that his
waiver of counsel was valid; second, it erred by failing to
recognize that his Sixth Amendment right to counsel was
denied when the trial court refused to allow him to revoke
his waiver; and finally, the court wrongly concluded that his
right to counsel was not violated when the jail officials re-
fused to let Rhodes meet with Kovac.

The district court began with the trial court's first reason
for denying Rhodes's request to reinstate Kovac: that it was
untimely. Had that reason stood alone, the court said, "the
trial judge would not have abused his discretion." Given the
fact that Rhodes made his request on the brink of trial, the
district court saw no abuse of discretion in the timing of the
trial judge's ruling, which he delivered on the morning of
trial. By that time, the district court acknowledged, "wit-
nesses had already been assembled and the trial could not
have been rescheduled without interfering with orderly
court administration." Thus "the trial judge would have
been within his discretion to deny Rhodes's request solely

because of its untimeliness and the resulting prejudice to court administration."

Instead of ending its inquiry there, however, the district court went on to consider the state judge's second reason: his concern that Rhodes was engaged in gamesmanship and an attempt to manipulate the record. The district court found this characterization to be unreasonable, despite the Wisconsin Court of Appeals's contrary view. It took issue with the idea that Rhodes's various requests concerning Kovac and his request to use a computer were "mutually exclusive." In fact, the district court said, these were "alternative and consistent requests," and the state court's conclusion to the contrary was unreasonable. It then undertook a *de novo* review of the trial court's denial of Rhodes's request to reinstate his counsel and found it to be an abuse of discretion. "The only reasonable conclusion," the district court concluded, was that "Rhodes earnestly wanted Kovac to represent him because he thought Kovac would do a better job than he could do himself, not because he was playing games." The finding of gamesmanship and manipulation was clear error, therefore, and the reliance on it deprived Rhodes of his Sixth Amendment right to counsel.

This left the obvious question why, despite any error on the second ground, the first was not enough to require the denial of Rhodes's petition for a writ of habeas corpus. The district court explained that it understood its task to be to "review[ ] a judge's reasoning process, not merely the outcome produced by that reasoning process." This meant, the court wrote, that even if the state court's resolution of the case "is within the range of permissible outcomes," that is not enough when the judge's reasoning process is "tainted"

by a clearly erroneous factual finding. Because it had found that the state trial court erroneously relied on the gamesmanship ground, the district court granted Rhodes's petition.

## II

Warden Dittman has appealed from that decision. He raises three arguments for reversal: first, that there is no clearly established right to forgo self-representation at the last minute; second, that the Wisconsin courts did not unreasonably apply nor act contrary to clearly established Supreme Court precedent when they denied Rhodes's request to reinstate Kovac; and third, that the district court erred in deciding that Rhodes was entitled to issuance of the writ because the Wisconsin courts unreasonably determined that Rhodes engaged in gamesmanship in making his request. Our resolution of the third issue obviates the need for us to discuss Dittman's other arguments.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, Rhodes is entitled to habeas corpus relief if the challenged state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or else "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Although we review the district court's judgment regarding habeas relief *de novo*, *Mertz v. Williams*, 771 F.3d 1035, 1039 (7th Cir. 2014), our review of the underlying state court decision is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quotations omitted). "We must deny the writ if we can posit arguments or

theories that could have supported the state court's decision, and if fairminded jurists could disagree about whether those arguments or theories are inconsistent with Supreme Court holdings." *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013) (citing *Pinholster*, 131 S. Ct. at 1402). Furthermore, the presumption that a state court's factual determinations are correct can be rebutted only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Such determinations are "not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quotations omitted).

The district court recognized that at least one valid argument supported the determination of the Wisconsin Court of Appeals that the trial court properly denied Rhodes's request to reinstate Kovac: the request was untimely. It was correct to do so. Faced with a defendant who declares herself legally incompetent on the threshold of trial, the court must step back and assess the situation as a whole, including potentially "serious inconvenience to judge, jury, opposing counsel, witnesses, and other litigants." *United States v. Tolliver*, 937 F.2d 1183, 1187 (7th Cir. 1991) (quotations omitted). This is true even if a defendant wants a continuance for the purpose of obtaining counsel. *Id.* at 1188; see also *United States v. Turk*, 870 F.2d 1304, 1307 (7th Cir. 1989); *United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir. 1984) (a *pro se* defendant who "at the last minute … gets cold feet and wants a lawyer to defend him … runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause"). See generally *Morris v. Slappy*, 461 U.S. 1, 11 (1983).

That is exactly what the state court did in Rhodes's case. It accepted Rhodes's waiver of his right to counsel on April 6, 2007. His trial was to begin on May 7. Not until three days before that did Rhodes write to request that Kovac represent him. The trial judge was unable to deal with this request until day one of trial, when it denied Rhodes's request. At that point, as the Wisconsin Court of Appeals noted, at least a dozen witnesses—some of them inmates—were waiting to testify. The district court recognized the eleventh-hour nature of the request and agreed with the Wisconsin Court of Appeals that it was not an abuse of discretion for the trial judge to deny Rhodes's request for that reason.

Where the court erred was in failing to recognize that this independent reason disposes of the habeas corpus petition. Section 2254(d) focuses on the ultimate decision of the state court, not on parts of a written opinion that might in isolation appear to be misguided but that in the end are not necessary to the outcome. See 28 U.S.C. § 2254(d)(2) (writ may not be granted unless state court's adjudication "resulted in a *decision* that was based on an unreasonable determination of the facts" (emphasis added)). As we often have noted, we review judgments, not opinions. See *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1019–20 (7th Cir. 2004); *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir. 1986); see also *Jennings v. Stephens*, 135 S. Ct. 793, 799 (2015). Neither the state courts nor the district court offered any reason to think that the timeliness decision was affected by the concern about gamesmanship or manipulation.

Because the state court explicitly provided a theory that supported its decision (the untimeliness rationale), we must deny the writ. *Kidd*, 734 F.3d at 703. As the Supreme Court

has noted, the federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Wisconsin Court of Appeals relied on a precedent from that state's supreme court advising trial judges to consider the timeliness of a request to substitute counsel and to be watchful for delay tactics arising from such requests at the eleventh hour. See *State v. Lomax*, 432 N.W.2d 89, 91 (Wis. 1988). This assures us that the timeliness rationale was an independent and adequate ground for the state court's decision. See *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

Moreover, AEDPA forecloses the type of searching analysis of a non-critical part of a state-court opinion that the district court undertook here. The district court was required by 28 U.S.C. § 2254(e)(1) to presume that the state court's factual determinations were correct. Those findings may be set aside only on the basis of clear and convincing evidence to the contrary. Even assuming that the district court was correct that Rhodes's requests were not "mutually exclusive" was erroneous, the state court's contrary conclusion was not necessary to its decision. We add that we are hard-pressed to see why this factual assessment of the record was so far out of bounds that it qualified as "unreasonable" under AEDPA. Viewed deferentially, the record contains some support for the state court's finding that Rhodes had a history of equivocal behavior regarding his representation and that his timing was suspicious. It is worth noting as well that Kovac did not file an appearance on behalf of Rhodes before trial began. Instead, both Rhodes and Kovac were content to write letters before trial, and then pepper the judge with requests and motions after the trial began.

Before concluding, we must underscore the importance of the standard of review to our decision. We are making no comment on how we might have assessed either the timeliness of Rhodes's efforts to retain Kovac, starting from the April 18 communication, or the nature of his tactics. That is because our independent view is neither here nor there. As we have observed in the past, AEDPA requires more than simple error before a lower federal court can upset a state-court decision. See, *e.g.*, *Hardaway v. Young*, 302 F.3d 757, 759 (7th Cir. 2002) (reversing grant of writ despite court's "gravest misgivings and only in light of the stringent standard of review" of AEDPA in question of whether to suppress 14-year-old's confession to murder).

### III

Because the Wisconsin appellate court's determination that Rhodes waited too long to renew his request for counsel was a reasonable and sufficient ground for its decision, and there was no need on these facts to inquire further, the district court should not have issued the writ of habeas corpus. We therefore REVERSE its judgment.