In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1480

RAUL PEREZ-GONZALEZ,

*Petitioner-Appellant*,

*v.*

JACQUELINE LASHBROOK,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4210 — **John Z. Lee**, *Judge*.

ARGUED JUNE 1, 2018 — DECIDED SEPTEMBER 17, 2018

Before RIPPLE, KANNE, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Raul Perez-Gonzalez pleaded
guilty to first degree murder for his role in a gang-related kill-
ing. His plea agreement called for a thirty-five year prison
sentence and required him to testify truthfully in any prose-
cution against his co-defendants. More than one year after
agreeing to these terms and pleading guilty, as the trial of a
co-defendant approached, Perez-Gonzalez had second

thoughts and declined to testify. For this refusal, he was con-
victed of contempt of court, resulting in an additional ten-
year sentence.

After exhausting his state court remedies, Perez-Gonzalez
petitioned for habeas corpus asserting the State breached the
plea agreement by requesting the contempt sanction, and that
the Illinois Appellate Court unreasonably concluded to the
contrary. The district court denied his habeas petition, but
granted his request for a certificate of appealability. Perez-
Gonzalez contends the plea agreement immunized him from
contempt proceedings. Although he presents a reasonable in-
terpretation of the plea agreement, he has not proved that the
state appellate court's alternative interpretation was unrea-
sonable, so we affirm the judgment of the district court.

## I. Background

Raul Perez-Gonzalez made three critical decisions. The
first was on a January 2009 evening in Elgin, Illinois. What
began as posturing among rival street gangs in a fast food
parking lot intensified into a car chase and the senseless mur-
der of Paola Rodriguez, who was shot as she drove the girl-
friend of a gang member away from the confrontation. The
next day Perez-Gonzalez confessed to driving the car from
which the fatal shots were fired. He also informed police that
his passengers included Manith Vilayhong, who ordered the
shooting, and Tony Rosalez, who shot the gun. All three men
were charged with first-degree murder.

### A. *The Plea Agreement*

Perez-Gonzalez's second pivotal decision was agreeing to
cooperate in the prosecution of his co-defendants. On
August 27, 2010, the State presented Perez-Gonzalez with a

letter containing a plea offer. In exchange for pleading guilty to first-degree murder while in possession of a firearm, he would receive a thirty-five year sentence: twenty years for first degree murder, plus a fifteen year add-on for possession of a firearm. The plea offer also included a conditional reduction of his sentence by fifteen years if he cooperated "in all aspects" with the prosecution of his co-defendants, including testifying truthfully at their trials. Once Perez-Gonzalez's cooperation was "successfully completed," the State promised to amend his charge to omit reference to a firearm and to vacate the fifteen year add-on, reducing his sentence to twenty years. The letter emphasized that:

> Any deviation from that truthful [testimony] will be grounds for the [State]–at [its] sole discretion–to withdraw its agreement to delete reference to a firearm as well as to withdraw its agreement to vacate the 15-year add-on. In such event, the defendant would then be required to serve the terms of the initial agreement, which would be 35 years [in the Illinois Department of Corrections], plus [mandatory supervised release] as well as fees.

At the plea hearing, the parties relayed the agreement's terms to the trial court. After describing the State's offer letter to the trial court, the State's attorney remarked, "I think that's all the terms." In response, counsel for Perez-Gonzalez acknowledged the State presented an accurate description of the agreed upon terms. The trial court accepted the plea agreement and sentenced Perez-Gonzalez to thirty-five years.

**B.** *Contempt of Court Proceedings*

More than one year after Perez-Gonzalez pleaded guilty, pretrial proceedings began against his co-defendant Rosalez. When called to testify against Rosalez, Perez-Gonzalez made his third pivotal decision: he refused to answer any questions regarding the case, even spurning the trial court's order to answer. Perez-Gonzalez never testified untruthfully; he refused to testify at all. Rosalez was convicted of first-degree murder and sentenced to thirty-five years, but the allegation that Rosalez discharged the firearm was not proved, which would have added twenty-five years to Rosalez's sentence.

In response to Perez-Gonzalez's decision, the State petitioned for criminal contempt. Perez-Gonzalez agreed to a bench trial for that proceeding, at which the parties stipulated in writing that Perez-Gonzalez's plea agreement "required" him to testify "in any case against any co-defendant." The trial court found him in contempt for failing to testify in the Rosalez case.

At Perez-Gonzalez's sentencing hearing for contempt, he again stipulated in writing that his plea agreement "required" him to testify against co-defendants Vilayhong and Rosalez. This second stipulation also provided that Rosalez was tried without Perez-Gonzalez's testimony. The sentencing judge determined that Perez-Gonzalez's refusal to testify hindered the State's prosecution of Rosalez, and sentenced Perez-Gonzalez to ten years' imprisonment for contempt, served consecutive to his thirty-five year murder sentence, for a total sentence of forty-five years.

### C. *Direct Appeal and Collateral Attacks in State Court*

Perez-Gonzalez appealed his contempt conviction and sentence to the Illinois Appellate Court arguing, among other issues, that the contempt prosecution breached the plea agreement. He contended the initial thirty-five year sentence should be the exclusive repercussion for refusing to testify. To him, the plea agreement contained a "built-in sanction" so the only consequence for his failure to testify would be that the State could decline to vacate the fifteen year add-on.

The Illinois Appellate Court rejected this reasoning. After reviewing the plea offer letter, the transcript of the plea hearing, and the written stipulations at the contempt proceedings, that court held that the plea agreement did not bar the State from pursuing a contempt conviction. The court acknowledged Perez-Gonzalez may have a due process right to enforce the plea agreement if it induced his guilty plea. However, the court determined that the State never promised to refrain from filing a contempt of court petition if he refused to testify against Rosalez. Instead, the court held that "the plea agreement clearly required [Perez-Gonzalez] to testify against Rosalez and his failure to do so violated that agreement." Because Perez-Gonzalez—not the State—had breached the agreement, his due process claim failed.

The Illinois Appellate Court also concluded that the stipulations did not expressly or impliedly (via the "built-in sanction") support the outcome that Perez-Gonzalez insists upon: that the only consequence for refusing to testify would be the State not moving to vacate the fifteen year add-on. Even if the State had breached the agreement, the Illinois Appellate Court reasoned that would not be a defense to the contempt

charge because the breach would not authorize Perez-Gonzalez to refuse the trial court's order to testify. The Illinois Supreme Court rejected Perez-Gonzalez's petition for leave to appeal that decision.

### D. *Federal Proceedings*

Perez-Gonzalez petitioned for a writ of habeas corpus, arguing that when the State sought the contempt sanction it breached the plea agreement. He requested relief from his contempt conviction and its consecutive ten year sentence. The district court denied the petition, but issued a certificate of appealability. We review the district court's denial of a habeas petition de novo and its findings of fact for clear error, *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017), and have appellate jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

### A. *Legal Standards*

Perez-Gonzalez seeks habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, according to which we may grant relief if a state court's decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by Supreme Court precedent; or (2) rested on an unreasonable factual determination. 28 U.S.C. § 2254(d)(1)–(2). These standards are "difficult to meet" and "highly deferential." *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

Under 28 U.S.C. § 2254(d)(1), a state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to

the facts of the particular state prisoner's case, unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000).

An "unreasonable application of" federal law means "objectively unreasonable," not merely wrong; even clear error will not suffice. *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) (citing *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

As for 28 U.S.C. § 2254(d)(2), a decision is based upon an "unreasonable determination of the facts" if it "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (citation omitted). We presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Newman*, 726 F.3d at 928.

The Illinois Appellate Court described the interpretation of Perez-Gonzalez's plea agreement as presenting a question of law. If the appellate court's interpretation was a determination of state law, then we are barred from performing habeas review. *See King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016) ("It is well-established that on habeas review, a federal court cannot disagree with a state court's resolution of an issue of state law."). In this case, however, the parties dispute the consequences of the plea agreement's terms; specifically, whether or not those terms immunized Perez-Gonzalez from the State's contempt prosecution for his refusal to testify. Both Illinois and federal courts recognize that the interpretation of ambiguous plea agreement terms present factual rather than legal questions. *See, e.g.*, *United States v. Williams*, 198 F.3d 988,

992 (7th Cir. 1999) ("[D]isputed terms in a plea agreement are matters of fact … ."); *People v. Navarroli*, 521 N.E.2d 891, 893 (Ill. 1988) ("The existence of a plea agreement and its terms and conditions are questions of fact … ."). So this case presents a factual question properly subject to our review.

**B.** *Application*

**1.** ***Perez-Gonzalez's claim under 28 U.S.C. § 2254(d)(1) fails.***

Perez-Gonzalez does not dispute that the Illinois Appellate Court identified the correct legal rule governing his case. Rather, he argues the rule was unreasonably applied. *See* 28 U.S.C. § 2254(d)(1). Specifically, he contends the appellate court unreasonably applied *Santobello v. New York*, 404 U.S. 257 (1971), in which the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. Perez-Gonzalez maintains that the plea agreement prohibited the State from seeking additional punishment for his refusal to testify, so that the original thirty-five year sentence was the exclusive consequence for his noncooperation. To him, the only reasonable interpretation is that the contempt proceedings breached the plea agreement.

Perez-Gonzalez's interpretation is plausible, but he has not met his burden of showing, as he must, that the appellate court's contrary interpretation was unreasonable. A state's decision may stand as long as it is one of several equally plausible outcomes. *See Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). Perez-Gonzalez's petition turns on the reasonableness of the appellate court's interpretation of the plea

agreement under *Santobello*, in which the defendant received an express and unambiguous promise that the government breached. *Santobello*, 404 U.S. at 262. This case, unlike *Santobello*, involves a plea agreement with no express promise that the State would, or would not, do the activity Perez-Gonzalez objects to: pursue contempt proceedings for refusing to testify.

Without a promise, there can be no breach. *United States v. O'Brien*, 853 F.2d 522, 526 (7th Cir. 1988) (challenge that prison sentence exceeded plea agreement insufficient for reversal under *Santobello* where government made no promises regarding sentencing other than those clearly set forth in the agreement). Perhaps recognizing this principle, Perez-Gonzalez argues the plea agreement impliedly promises that the State would not pursue additional sanctions for refusing to testify, relying on *Ricketts v. Adamson*, 483 U.S. 1 (1987).

Although *Ricketts* recognized that plea agreements may include implied and binding terms, it is distinguishable from this case. In *Ricketts*, the Supreme Court held that double jeopardy rights could be waived by implication where the consequence of such waiver "could not be clearer" on the face of the plea agreement. *Id*. at 9–10. The defendant pleaded guilty to a lesser charge of second-degree murder in exchange for his testimony against his co-conspirators. *Id*. at 3–4. After the defendant refused to testify, the Court explained that the express terms of the plea agreement—that first-degree murder charges could be reinstated if the defendant refused to testify against co-conspirators—were "*precisely* equivalent" to an implied waiver of a double jeopardy defense. *Id*. at 10 (emphasis in original). A conclusion that the defendant had not waived his double jeopardy rights "would render the agreement

meaningless." *Id.* at 9–10 ("[W]e do not find it significant … that "double jeopardy" was not specifically waived by name in the plea agreement.").

*Ricketts* does not compel the conclusion that the State impliedly waived a contempt case against Perez-Gonzalez. The agreement in *Ricketts* spelled out exactly what would happen to the defendant if he refused to testify. Perez-Gonzalez's plea agreement, on the other hand, lacks the clarity and express terms of the agreement in *Ricketts*. The implied term in *Ricketts* (waiver of double jeopardy defense) was *per se* equivalent to the explicit terms; an alternative interpretation would vitiate the meaning and integrity of the agreement. *Id*. at 10. The implied term Perez-Gonzalez proposes—that the State waived its ability to pursue contempt—is not equivalent to the express terms of the agreement. Nor does the state appellate court's alternative interpretation that no implied term exists render the agreement meaningless.

At best, *Ricketts* would require that the Illinois Appellate Court reasonably interpret the plea agreement to include the implied term Perez-Gonzalez prefers. The appellate court did not act unreasonably by determining no such implied term exists here. Perez-Gonzalez must do more than provide an alternative reading of the plea agreement. Because he has not shown that the state appellate court unreasonably applied the legal rule of *Santobello,* he also has not shown that the court's interpretation of the agreement was objectively unreasonable, and thus fails to meet the highly deferential requirements of § 2254(d)(1).

### 2.  *Perez-Gonzalez's claim under 28 U.S.C. § 2254(d)(2) fails.*

Perez-Gonzalez also finds no refuge in 28 U.S.C. § 2254(d)(2). Sufficient record evidence supports the Illinois Appellate Court's conclusion that the State was not prohibited from pursuing sanctions for his refusal to testify.

### a.  *The reasonable expectations of the parties*

Perez-Gonzalez argues the state appellate court's conclusion is inconsistent with the parties' expectations, so the court unreasonably interpreted the plea agreement's terms. When language in a plea agreement is ambiguous, as here, we look to "the parties' reasonable expectations and construe ambiguities against the government as the drafter." *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016) (quoting *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013)).

Perez-Gonzalez contends the parties' expectations are clear in the plea offer:

> *Any deviation from that truthful [testimony]* will be grounds for the [State] at [its] sole discretion–to withdraw its agreement to delete reference to a firearm as well as to withdraw its agreement to vacate the 15-year add-on. *In such event, the defendant would then be required to serve the terms of the initial agreement … .*

(Emphases added.)

Perez-Gonzalez contends the phrase "in such event" established a binary and conclusive set of possibilities: either he would testify and receive the reduced sentence, or he would

refuse to testify and "in such event" would not receive the reduced sentence. He also asserts the State attorney's comment at the plea hearing, "I think that's all the terms," binds the State to this interpretation. As such, he believes he was immunized from contempt proceedings. The State responds that "in such event" refers to when Perez-Gonzalez testifies untruthfully. According to the State, the "built-in sanction" (imposition of the original thirty-five year sentence) was the consequence for untruthful testimony, and the plea agreement was silent regarding the consequences for refusing to testify.

The record does not support Perez-Gonzalez's categorical reading of the plea offer. His argument assumes that the "built-in sanction" would apply whether he refused to testify, or he testified and lied. Perez-Gonzalez sees no distinction between testifying untruthfully, and not testifying at all. But his own conduct proves he believed the plea agreement required him to testify. He stipulated twice that the agreement required him to testify against Rosalez and Vilayhong, eliminating any ambiguity as to the parties' expectations. Perez-Gonzalez cannot reasonably expect the State to adhere to a deal that he himself violated. *See, e.g., United States v. Ramunno*, 133 F.3d 476, 484 (7th Cir. 1998) (defendant "lost his gamble" and breached agreement when he failed to provide "complete" and "truthful" information about criminal activity); *United States v. Ataya*, 864 F.2d 1324, 1331 (7th Cir. 1988) (defendant's post-sentencing testimony against co-defendant "was undoubtedly a part of the government's reasonable expectations in entering the agreement," so refusal to testify relieved government of reciprocal obligations) (internal quotations omitted).

The Illinois Appellate Court did not ignore the clear and convincing weight of the evidence when it concluded that Perez-Gonzalez broke his promise to cooperate and that the State did not violate the plea agreement by petitioning for a contempt order. Rather, its interpretation was objectively reasonable. *See Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir. 2011) (petitioner must establish state court committed "unreasonable error" in its determination of this issue) (quoting *Ward v. Sternes*, 334 F.3d 696, 703–04 (7th Cir. 2003)).

> b. *The enforcement of agreed upon terms*

Even without Perez-Gonzalez's stipulations at his contempt hearing and contempt sentencing, his habeas claim under § 2254(d)(2) is foreclosed. "Although the government must fulfill any express or implied promise made in exchange for a guilty plea, the parties' rights under the plea agreement are limited to those matters upon which they actually agreed." *United States v. Lacy*, 813 F.3d 654, 658 (7th Cir. 2016) (citations omitted). *Lacy* illustrates this court's application of this principle. There, we rejected the defendant's argument that the government had violated a plea agreement by requesting consecutive state and federal sentences. *Id*. at 657–58. The plea agreement was silent as to whether the sentences would run consecutively or concurrently, and the government did not make any implied promises on that topic. *Id*. Therefore, we concluded, the government did not breach the agreement by making a request on a matter that was simply not contemplated by the agreement. *Id*.

Here, the plea offer, the transcript of the plea hearing, and the parties' stipulations are silent as to the consequences for Perez-Gonzalez's blanket refusal to testify. None of these sources establish by clear and convincing evidence that the

sole outcome for refusing to testify is the imposition of the original thirty-five year sentence, as Perez-Gonzalez claims. The State never promised immunity from contempt proceedings or implied any such promises. Because Perez-Gonzalez's plea agreement is silent as to whether the imposition of his original sentence would be the exclusive consequence for his failure to testify, the Illinois Appellate Court's conclusion—that the State did not breach the agreement through the added ten year sentence for contempt of court—was neither unreasonable nor implausible.

c. *Alternative grounds for denying habeas relief*

Because we affirm the district court's dismissal on the these grounds, we need not reach the State's last contention that, even assuming a breach by the State, immunity from contempt proceedings would not be a proper remedy. *See Rhodes v. Dittmann*, 783 F.3d 669, 674–75 (7th Cir. 2015) ("Section 2254(d) focuses on the ultimate decision of the state court, not on parts of a written opinion that are not necessary to the outcome.").

AFFIRMED.